STATE EX REL. ERNEST FLECKENSTEIN BREWING
COMPANY v. DISTRICT COURT OF RICE
COUNTY AND ANOTHER.[1]

October 27, 1916.

Nos. 19,978—(139).

**Death — evidence of accident.**

1. A boy of 17 in previous good health dropped dead at the moment of contact with an electric wire or the socket attached to it. He was working on a wet cement floor. *Held*, this evidence sustains a finding that deceased died an accidental, and not a natural death.

**Workmen's Compensation Act — income of partial dependents — act of 1913.**

2. Deceased earned $7.50 a week. He gave it all to his parents, and lived with them, receiving his lodging, board and clothing. His father earned $18 a week. There was no other family income. The family consisted of the parents, deceased and three sisters. This evidence is sufficient to sustain a finding that the parents regularly derived part

[1]Reported in 159 N. W. 755.

---

Note.—For authorities reviewing the question of amount of compensation recoverable by dependents under the Workmen's Compensation Act, see comprehensive note in L.R.A. 1916A, 253. As to right to compensation for accidental injuries resulting in death, under the Workmen's Compensation Act, see note in L.R.A. 916A, 227.

of their support from the wages of deceased and were partially dependent upon him.

**Same — opinion evidence not conclusive.**

3. In view of this testimony, a statement made by the father on cross-examination that the amount earned by deceased was not enough to pay for his board and clothing, is not decisive of the case. An estimate given by a party on the witness stand, if out of harmony with his other testimony, is not conclusive.

**Same — minimum death benefit.**

4. Under chapter 467, Laws 1913, the minimum death benefit to be paid to partial dependents is $6 a week.

Upon the relation of Ernest Fleckenstein Brewing Company this court granted its writ of *certiorari* to review the action of the district court for Rice county, Childress, J., in proceedings under the Workmen's Compensation Act brought by George Schell, administrator of the estate of Kasper Schell, deceased, as employee, against relator, as employer, to recover compensation for the death of his intestate. Remanded with directions.

*Watson & Abernethy,* for relator.

*James P. McMahon,* for respondent.

HALLAM, J.

Kasper Schell, an employee of relator, met with death in the course of his employment in relator's brewery. Proceeding was instituted to enforce liability under the Workmen's Compensation Act in favor of his mother and father. Two principal questions arise:

First, was the death of deceased caused by accident?

Second, if so, were his parents partially dependent upon him?

The burden of proof is upon claimants as to both propositions.

1. Deceased was a boy of 17, in good health. He was about to test bottles of beer for defects or "specks" by subjecting them to electric light. A special testing apparatus was used for the purpose. In order to connect up the electric current he was obliged to utilize the wire of a drop light suspended from the ceiling, the wire being covered by the usual insulated cord. At the end of the cord was the ordinary brass socket and light globe. This drop light was connected with the main wires in

thc ceiling above. There is evidence from which the court could find that the electric current was on and that the voltage was 110. The floor was of cement and there was water upon it. Deceased started to detach the globe in order that he might adjust the socket to the testing machine. Another employee saw him when he "went up * * * and took hold of the globe." A few seconds afterwards he heard deceased shriek and looked over and deceased was lying on the floor. He shouted once, "help me," started to get up, fell again and died. When assistance came he was lying on the floor with a cord under him. One witness said he "had hold of the globe and the brass part." He later modified this by saying "he seems to have hold of it because when I dragged it out, I dragged it clean out of the socket." Another witness said that when they pulled the cord out the cord slipped through his fingers. The cord and globe were produced in evidence in the trial court, but they are not before us.

We are furnished with no evidence as to the amount of electric current which will cause death, nor as to the voltage which, under the conditions here found, would cause a current sufficient to cause a death dealing bolt to pass through a human body. A doctor was called to attend deceased, but the court has not been supplied with the information which he could have furnished. In these respects the evidence is unsatisfactory. Still there are some things strongly suggestive of accidental death. Boys of 17 do not often drop dead from natural causes. This boy was handling instrumentalities charged with electricity. Electric shock is a familiar cause of death. Some of the conditions found here, such, for example as the wet cement floor, were quite conducive to the passage of electric current. Deceased must have been stricken at the moment he came in contact with the electric wire or socket. In view of the age and previous health of deceased, the manner in which he was engaged, and the manner of his death, we think there was sufficient evidence to sustain a finding that deceased did not die a natural death, but that he did die from accidental or external cause.

2. The next question is, were the parents of deceased partial dependents? This case arose under chapter 467, p. 675, Laws 1913 (G. S. 1913, § 8195, et seq.), and before the amendment of chapter 209, p. 285, Laws of 1915. Under the 1913 act parents "who regularly derived part of

their support from the wages of the deceased" were partial dependents, Laws 1913, p. 681, c. 467, § 14, subd. 3 (G. S. 1913, § 8208, subd. 3), and were entitled to receive compensation in case of death. The test of dependency is, not whether they could support life without the contributions of the deceased, but whether they regularly received from his wages part of thir income or means of living. Howells v. Vivian & Sons, 85 L. T. 529. Deceased lived with his parents. The family at home consisted of father, mother, an invalid daughter of 24, a daughter of 15 and one of 12, and the deceased. At the time of his death deceased was earning $7.50 a week. He paid the whole amount to his parents and it was used for the family support. Spending money was handed out to him with much parsimony. He received next to none at all. He received his board and lodging along with members of the family. He also received his clothes. The father earned $18 a week. These two items, aggregating $25.50 a week, constituted the family income. Beside paying ordinary living expenses, the family were saving to pay a $500 mortgage on the family home. If the evidence stopped here, it would hardly be disputed that the parents "regularly derived part of their support from the wages of the deceased." He contributed nearer one-third than one-quarter of the family fund, and from the evidence above referred to it would appear highly improbable that his support substracted from the family store as large a proportion as he contributed.

3. The only trouble arises from the fact that on cross-examination the father testified, in answer to questions of counsel, that the $7.50 his son earned was not sufficient to pay for his board and clothing. If such were the fact, in no proper sense could it be said that the parents regularly derived any part of their support from deceased, or that they were dependent upon him. The claim is now made that the father and mother are concluded as to this fact by this testimony of the father.

Ordinarily, where a party makes an admission upon the witness stand, and it is not in any manner qualified, his adversary may with confidence rest his case upon it. Such admissions are styled by Mr. Chamberlayne "informal judicial admissions." 2 Chamberlayne, Evidence, § 1286. Where, however, the admission is qualified, or is inconsistent with other testimony of the same party, it is still evidence against him, but not conclusive. This is particularly true where the admission is based on esti-

mate or calculation. Culberson v. Chicago, M. & St. P. Ry. Co. 50 Mo. App. 556. The admission in this case is of this character. It called for the estimate or calculation of the witness. It was made on the spur of the moment. It is quite apparent that the witness made no real calculation of the cost of his son's board and clothing. Other undisputed facts are out of harmony with this admission. The admission was a damaging one, and the trial judge might have found in accordance with it, but we are of the opinion that he was not bound to do so. See Ephland v. Missouri Pac. Ry. Co. 57 Mo. App. 147, 162.

4. The court found that the parents "are entitled to a minimum of six and 50/100 dollars per week as provided by chapter 467 of General Laws for 1913," and judgment was rendered accordingly. The amount is erroneous. The minimum death benefit prescribed by the act of 1913 is $6 per week. This minimum we have held applies to partial dependents. State v. District Court of Ramsey County, 132 Minn. 249, 156 N. W. 120. The trial court in fixing the amount evidently confused the provisions of the 1913 act with those of the amendatory act of 1915, which fixes the minimum at $6.50 per week. The judgment must be modified so that recovery will be based on an allowance of $6, instead of $6.50 per week.

So ordered.