EMMA JEAN SHORT, APPELLANT, v. S. A. WHITE ET AL., RESPONDENTS. —133 S. W. (2d) 1039.

Kansas City Court of Appeals. November 20, 1939.

*Clark, Boggs, Peterson & Becker* and *Howard B. Lang, Jr.,* for appellant.

*A. W. Walker* and *Hulen & Walden* for respondents.

KEMP, J.—This is a suit by appellant upon a promissory note, in the principal amount of $2198, dated June 7, 1931, and due one year after date. The separate answer of defendants S. A. White and Ethel White admitted that they executed the note, but alleged that the note was executed and delivered to the payee, Olive M. Brown, in renewal of a former note in the principal amount of $1250, made by them to the said Olive M. Brown in 1921, and that the sole consideration of the note sued upon was said original note. Their separate answer further alleged that the original note was fully paid prior to the execution of the renewal note sued upon, and that said note sued upon was without consideration.

The separate answer of the defendants J. T. White and H. C. White admitted that they signed the note sued upon as sureties for the defendants S. A. White and Ethel White, but upon information and belief alleged that the note sued upon was executed in renewal of a former note made by defendants S. A. White and Ethel White in 1921, and that "said former note was fully paid prior to the execution of the note sued upon, and said note sued upon is wholly without consideration and invalid."

The trial of the case before a jury resulted in a verdict in favor of the defendants (respondents) and judgment was entered according-ly, from which judgment plaintiff prosecutes this appeal.

About June 7, 1931, Mrs. Brown advised the respondents that their note for $1250, executed in 1921, was about to become barred by the Statute of Limitations, and requested them to execute a new note in renewal thereof in the sum of $2198, representing the unpaid principal of the original note plus the accrued interest thereon. Complying with this request, the note in suit was executed. Soon thereafter, the exact date not appearing, Mrs. Brown delivered the note to her daughter, who is plaintiff herein, without endorsement, but subsequent to

maturity thereof and on or shortly after October 8, 1932, she endorsed the note in blank without recourse.

Following the institution of the suit, and approximately a month before the trial, plaintiff (appellant) took the depositions of respondent S. A. White and of the accommodation makers, J. T. White and H. C. White. In the deposition of S. A. White, he testified that some time prior to June 7, 1931, he was indebted to his sister on a note for $1250 with accrued interest, which was signed by his wife and two brothers as sureties; that the note was about to become barred by the Statute of Limitations and that his sister, Mrs. Brown, requested a new note and that, on June 7, 1931, in compliance with this request, he and his wife and two brothers executed the note in suit as a renewal note for the $1250 with accrued interest. He did not himself compute the interest but took his sister's word that the computation was correct, and stated that if the interest was figured correctly on the original note, that he, at the time of the execution of this note, owed Mrs. Brown the $2198 named therein.

"Q. And you were satisfied on June 7, 1931, with the computation of interest after giving you credit for the interest payment, leaving a balance due of $2198, and you signed it feeling that way? A. Yes, sir."

He also testified in his deposition that there was a sum of $200 due from Mrs. Brown to him on some cattle trade, and that on May 26, 1932, he directed this sum to be applied on this note, and admitted that he had made no payment on the note other than the $200 credit due from the cattle transaction. The credit of $200, under date of May 26, 1932, was endorsed on the note.

Upon trial of the case, respondent S. A. White was asked to relate the discussion had between him and Mrs. Brown at the time of the execution of this renewal note.

"Q. I will get you to state if at the time you executed this note June 7, 1931, you had a discussion with Mrs. Brown concerning your obligations to her and your wanting to have a settlement. A. Yes, sir.

"Q. What was that discussion? A. Well, I just couldn't recall it word for word.

"Q. Well, in substance what was it that was said by you and by her at the time this note was signed? A. Well, she said that the note was about out. I said, 'Let's figure up and get this note out of the way.' I said, 'I have something coming and you owe me.' And she said, 'Emma Jean (plaintiff herein) has got it,' and she said, 'You give me a new note and we will get it fixed up.'"

None of the other defendants testified at the trial. Mrs. Brown, the payee, did not testify either by deposition or at the trial.

Respondent H. C. White, in his deposition, admitted that he executed this note as a renewal note for the original $1250 note, on which he was likewise an accommodation maker. He testified that he

recalled the circumstances under which the $200 credit was endorsed upon the note in suit. In this connection he testified that his brother, S. A. White, was in financial straits at the time of the execution of this renewal note, and that it was agreed at that time that Mrs. Brown would furnish S. A. White some money and farm equipment to raise feed to carry some cattle, and that "when they wanted to terminate the contract he (S. A. White) thought that there was $500 in it, and she (Mrs. Brown) didn't think so, and they finally agreed on $400, and that was agreed to and credited on the note. It was agreed that was to be credited on the note;" that independent of this note they had other arrangements for feeding cattle and sharing profits, and that when they terminated that agreement they determined the profit was $400, half of which belonged to Mrs. Brown and half to S. A. White. He also testified that this was the only payment made on the note, so far as he knew, and that he knew of no payments having been made on the $1250 note.

The testimony of J. T. White was practically to the same effect as that of respondent H. C. White.

Upon the trial, respondent S. A. White undertook to show from the records of the Jacksonville Savings Bank, where he did business, some twenty-five items of checks and deposits to Mrs. Brown's account, which, it is contended, represented payments made by him to Mrs. Brown between March 3, 1920, and November 6, 1926, in the aggregate amount of $10,492.12. Respondent S. A. White concedes that one item of $1592.80 was for cattle purchased by S. A. White from Mrs. Brown, and that the amount of credits to which he is entitled is thereby reduced to $8899.32. Without presuming to determine the question, it occurs to us that the testimony with reference to another item of $1600 would seem clearly to indicate that it represented returns on cattle belonging to Mrs. Brown, and, if this be correct, it should likewise be deducted from this amount, thus leaving $7299.32 as the total amount for which this respondent would be entitled to credit on these items. There were three other items shown in the evidence, aggregating $752.02, for which respondents contend they are entitled to an additional credit, which would make the total credits to which they would be entitled, upon their theory and this computation, $8051.34.

Plaintiff (appellant) then offered in evidence a list of cancelled checks, bearing dates from January 10, 1921, to February 21, 1931, from Mrs. Brown to said respondent S. A. White, which aggregated $14,510.42, and respondent S. A. White testified that probably "backwards and forwards" he had owed Mrs. Brown as much as $14,000, but not at any one time; that this amount was in addition to four notes (other than the one in suit) executed by this respondent to Mrs. Brown and aggregating $3731.95. It was shown, however, that a number of the checks going to make up this sum of $14,510.42 were for the purchase of cattle and feed for Mrs. Brown. Respondents con-

tend that, with these items eliminated, the total amount of checks of Mrs. Brown to respondent S. A. White, delivered for his personal use, amounted to $5587.55.

It is respondents' position that the difference in these amounts was sufficient to pay all of the notes herein mentioned with some balance over. While, under our calculation, this is not true, there nevertheless is a difference of more than sufficient to pay the original note of $1250 with all accrued interest thereon, and this was the situation at the time the note in suit was executed. The question is then presented as to whether, under such circumstances, this can be deemed payment of the note in suit.

In support of this contention, appellant urges that ''even if it be conceded that there is evidence other than the testimony of respondents from which a jury might have found the note to have been paid, still the verdict should have been directed for appellant, because respondents cannot prevail when their own testimony destroys their case. S. A. White, the principal maker of the note, having himself testified, both in his deposition and at the trial, that the $1250 note was unpaid when he executed the note in question, and that it was executed as a renewal of that note and accrued interest, is bound thereby, regardless of any other evidence that might have been offered to support the pleaded defense of payment.''

It is well-settled law in this State that the testimony of a party at a former trial, which would bar his right to prevail therein, will not operate as an absolute bar to his right of recovery in a subsequent trial wherein his testimony is contradictory to that in the former trial.

In the case of Steele v. Kansas City Southern Ry. Co., 302 Mo. 207 (an appeal from a second trial of the case, the opinion in the first appeal being reported in Steele v. K. C. S. Ry. Co., 265 Mo. 97), at page 219, the Missouri Supreme Court *en banc,* after quoting from the case of Davidson v. St. L. S. F. Ry. Co., 301 Mo. 79, said:

''It is thus apparent that Court *en banc* is committed to the proposition that upon a subsequent trial the plaintiff is not absolutely bound by his testimony at a former trial; that the jury has the right to consider his testimony given at the subsequent trial, notwithstanding it is shown that his testimony at the former trial tended to show the existence of a contrary state of facts; that the rule announced in the first Steele case opinion cannot be extended to a subsequent trial.''

In the very recent case of McNatt v. Wabash Ry. Co., 341 Mo. 516, the Supreme Court reaffirms this view, citing the Steele case, *supra,* and quoting with approval the following statement of the rule as set out in Davidson v. St. L. S. F. Ry. Co., *supra*:

''The general rule is that where a plaintiff at one hearing testified in a given way, and at a later hearing testifies to the opposite, it is for the jury to determine what credence it will give to the evidence given before them, as impeached by what such party said at the previous hearing.''

Appellant, in support of her position, cites Behen v. St. Louis Transit Co., 186 Mo. 430, 85 S. W. 346; McCoy v. Home Oil & Gas Co., 60 S. W. (2d) 715; and Paetz v. London Guarantee & Accident Co., Ltd., 71 S. W. (2d) 826. These cases do support the rule that admissions against interest in a given case may be taken as true for the purposes of a decision in that particular case, and if an admission by a party at a given trial of a case is such as to destroy his right of recovery therein, he is bound thereby even though there be conflicting testimony which would support his right to prevail, unless there is a reasonable explanation for the admission that otherwise destroys his case. But there is nothing said in any of the cases cited by appellant in support of this proposition, that in any way conflicts with the rule herein announced.

If a party be not bound at a subsequent trial by a solemn declaration made by him at a preceding trial, certainly he will not be absolutely bound by testimony given in a deposition taken prior to the trial of a case. The introduction of conflicting statements of a party made at some prior hearing goes only to challenge the credibility of such party's testimony given at the trial of the case.

But appellant also suggests that the respondent S. A. White admitted in his testimony *at the trial of the case* that the $1250 note was unpaid at the time he executed the note in suit, but no reference to the record is made where such testimony is to be found. The only part of respondent's testimony *at the trial* which, so far as we can find, could possibly be so construed is contained in the following question and answer:

"Q. Now, the $1250 note was the note not paid and went into this note for $2198? A. Yes. . . . Mrs. Brown was banker and bookkeeper and I turned the money over to her and I done the business (referring to their partnership dealings in buying, feeding and selling cattle)."

This, considered in connection with the immediately preceding questions and answers cannot, we think, fairly be said to amount to an admission that he had never paid the original $1250 note. But, even if it be susceptible to such interpretation, we think it may reasonably be inferred from the testimony of respondent S. A. White, taken as a whole, that he was merely undertaking to say that he had made numerous payments to Mrs. Brown for which no credit had been given, but that this note was a valid obligation from him to Mrs. Brown which was entitled to be offset by her against the moneys that he had paid to her. We think that any possible conflict arising from the quoted testimony of the respondent S. A. White is explained by his further testimony with reference to payments made to Mrs. Brown between the date that the original note was executed and the date on which the renewal note was given, and hence the rule sought to be invoked by appellant is not applicable.

In further support of her contention that the instruction for a

·directed verdict in her favor should have been given, appellant urges that the defense of payment of the original note herein referred to must fail since the evidence shows that the payments applicable to the notes were not sufficient to pay *all* of the notes which respondent S. A. White had executed and delivered to Mrs. Brown. With this contention we cannot agree.

The rule with reference to the application of payments, where more than one obligation exists, seems to be well-settled in this State. Under such circumstances, as a general rule, a debtor has the right to direct upon which particular claim a given payment shall be applied. If the debtor makes a payment without giving any such direction, then the creditor has the right to apply the payment to any of the claims which he may elect. In the event the debtor fails to direct the application of the payment and the creditor fails to credit any particular claim with the payment, then the law will apply the payment to the various obligations in the order of their date of maturity, except in those cases where it would be inequitable so to do. [Beck v. Haas, 111 Mo. 264, l. c. 268; Lyons v. Carter, 84 Mo. App. 483, l. c. 489; Campbell Glass & Paint Co. v. Davis-Page Planing Mill Co., 130 Mo. App. 474; Threshing Machine Co. v. Matthews, 188 Mo. App. 429, l. c. 434; McMillan v. Grayson, 83 Mo. App. 425, l. c. 431, 432.] And where no directions have been given by the debtor and no application has been made by the creditor, and where some obligations are secured and others unsecured, the court will apply the payment to the more precarious obligations as against others which are secured. [Price v. Merritt, 55 Mo. App. 640, l. c. 645-646.] In the case at bar, however, all of the notes mentioned in evidence, save one, were unsecured notes and with this exception, no one note was more precarious than another. This being so, then as to the unsecured notes, the general rule hereinabove set out should apply.

In so holding, we, of course, are not undertaking to say whether any payments to Mrs. Brown, as testified to by respondents, should necessarily be applied to the original note of $1250. The record indicates that the respondent S. A. White had executed and delivered to Mrs. Brown other notes than those specifically described herein. Furthermore, there is testimony to the effect that a suit had previously been brought on some note from said respondent to Mrs. Brown, but nothing appears as to the result of that suit, and hence nothing appears as to whether any of these alleged payments to Mrs. Brown were, as a result of that suit, applied in payment of the note therein sued on. These are questions which, if presented in evidence at the trial of the case, are, under proper instructions, for the jury.

We, therefore, hold that the court did not commit error in refusing an instruction for a directed verdict in favor of appellant.

Appellant further contends that the court erred in admitting in evidence respondents' exhibits ''B'' to ''Z'' (purporting to be the

records of the Jacksonville Savings Bank), because not properly identified, and erred in permitting the witness Holcomb to testify as to the contents of said exhibits because it was not shown that she either made the records, had charge of the records, or had personal knowledge of them.

The witness Bula Holcomb was called by respondents and testified that she was, for a time, bookkeeper and assistant cashier of the Jacksonville Savings Bank, but had not been so employed since 1918, which was several years prior to the transactions about which she was permitted to testify. She testified that a book containing exhibits "B" to "Z" was a record book of the Jacksonville Savings Bank; that while she was not an employee of the bank after 1918, she "worked there a few days one time afterward; I don't know just when it was." She testified that she had nothing to do with the making of the records of the bank so offered in evidence, but stated that she was a stockholder of the bank and was usually "called in," but the time or times when she was called in, or the period within which she was called in, does not anywhere appear; nor does it appear for what purpose she was called in; nor is there any testimony that she was ever so called into the bank within the period during which any of the transactions referred to in evidence occurred. In short, there was no evidence that she had any personal knowledge of or connection with the records of the bank during the period covering the transactions referred to in the records offered in evidence. The books containing these records had never been in the possession of or under the control of the witness, but for some seven years prior to the trial had been in the possession of an individual who had purchased certain of the assets of the bank following its failure and closing. The witness testified that she thought she could identify the handwriting on the exhibits, testifying that they were made in the handwriting of Mrs. Riley, formerly Pearl Forest, Miss Mary Forest and Miss Lila B. Burton, and that these respective parties had been employed there in the capacity of bookkeeper and assistant cashier. It was not shown that any of these parties so named, or that any party under whose direction the records were made, was beyond the jurisdiction of the court, or that any one of them was, for any other reason, unavailable as a witness.

With this attempted qualification of the witness, she was then permitted to testify, over appellant's objection, that the records showed various checks that were paid on a given day, and that various names of persons appearing in said records indicated persons who had drawn checks on that day, and that other names there appearing indicated persons to whom said checks were made payable, and that certain other names represented persons to whose credit deposits had been made. She then, by referring to the exhibits, testified that some twenty-five checks had been drawn by the respondent S. A. White in favor of Mrs. Brown and that the proceeds thereof had been deposited to the

account of Mrs. Brown. It was upon this testimony that respondents relied for proof of payment of the original note herein referred to.

Subject to a proper identification, the books of this bank, when shown to be records kept in the ordinary course of business and kept correctly and currently with the transactions therein recorded, would be admissible in evidence. We think, however, that under the circumstances herein set out, the testimony of the witness Holcomb, with reference to the contents of these records, was improperly admitted. From the testimony set out in the record, it is clear that this witness could only presume from an experience antedating the making of these records as to how the records were kept and as to what information they were intended to convey. She neither made the records nor were they made under her direction and control; nor can any rule of necessity be here invoked as there was no showing that those who made the records or that the persons under whose direction they were made were, for any purpose, unavailable as witnesses. [22 C. J., sec. 1072, p. 883, et seq.; 20 Am. Jur., p. 945, par. 1085; Gordon & Koppel Clothing Co. v. N. Y. Central Ry. Co. (Mo. App.), 285 S. W. 755; State Bank of Pike v. Brown, 165 N. Y. 216, 53 L. R. A. 513; 10 R. C. L., p. 1174, par. 373.]

For error in the improper admission of evidence, the case is reversed and remanded. All concur.