## SOUTHERN RENDERING CO. v. STANDARD RENDERING CO.

### Civ. A. No. 2340.

United States District Court
E. D. Arkansas, W. D.
April 13, 1953.

104

Edward L. Wright, Wright, Harrison, Lindsey & Upton, R. C. Limerick, Jr., and Ashley Cockrill, Little Rock, Ark., for plaintiff.

Leon B. Catlett, Catlett & Henderson, Little Rock, Ark., for defendant.

DELEHANT, District Judge.

Ruling is now made upon a motion tendered by the defendant for the entry in its favor of a summary judgment. The motion is being denied and overruled. This memorandum will explain briefly the consideration underlying the action it announces. Inasmuch as the case will re-main pending for trial in the usual manner, it is thought that an extended discussion of the issues, and especially of collateral points, is not in order. Another judge will undoubtedly try the action. In that service he ought to be quite unhampered by any unnecessary comment on the part of one who rules upon a preliminary issue. Nor should such comment be offered in disregard of the consequence which, without judicial design, it might have upon the manner of the further presentation of the case by counsel.

The plaintiff, an Arkansas corporation, sues the defendant, a Delaware coporation doing business in Arkansas, and demands injunctive relief against certain acts of the defendant alleged to violate sections 1 to 7 of the Sherman Act and sections 15, 18, 19, 22 and 26 of the Clayton Act, Title 15 U.S.C.A., and also damages, costs and attorneys fees.

The complaint, among other allegations, makes the assertions which are briefly summarized in the next following three paragraphs.

Both parties to the suit are engaged in the rendering business within the Little Rock area, the plaintiff operating a plant in Little Rock and the defendant maintaining one in Jacksonville. The prime function of the rendering industry is the conversion of inedible by-products of the slaughtering of food animals into marketable products. The raw material of the enterprise includes shop fat, suet, offal, bones, unrefined grease and meat trimmings. Processed, these become tallow, soap grease, cracklings and the like. Raw materials are purchased and gathered from local slaughter houses, retail butchers, restaurants, large meat consuming institutions and miscellaneous persons owning dead animals. The collection is made by renderers' trucks periodically covering regular routes with stops at probable sources of supply. There is no open market in which such raw materials may be obtained; and the supply thereof is limited by the available material within the Little Rock area during any examined period, and neither increases nor decreases from time to time in accordance with a prevailing

price structure. On the completion of the rendering process, a substantial portion of the final product is shipped in interstate commerce to reach its ultimate destination and place of use.

The defendant's alleged acts, whose irregularity is asserted, are said to have been planned and accomplished within the states of Arkansas, Missouri, Texas, Kansas and Illinois and in other parts of the United States and to involve commerce among the states and to constitute restraints upon trade and commerce. The parties to the action are alleged to have been the only renderers engaged in their business within or near Little Rock, Arkansas since January 1, 1948 and in that interval to have been in active competition with each other. The defendant is closely affiliated with several other corporations engaged in the same business located in Chicago and East Saint Louis, Illinois. They operate in conjunction with each other and, together, have resources sufficiently large to enable them to encounter substantial losses within their Little Rock business area over a considerable period of time in view of their ability to offset such losses by profits from operations in other areas less competitive in character. The combined assets of the defendant and the other corporations with which it is said to be affiliated are approximately $2,000,000, in contrast with the plaintiff's total worth of $100,000. The acquisition of raw materials by the plaintiff occur only in the Little Rock area, whereas the operations of the defendant cover many other communities in different states. In arriving at prices which may reasonably and prudently be paid for raw materials, each of the parties, according to sound business methods, should compute such prices according to the prevailing selling price of their respective manufactured products, after giving consideration to operating and manufacturing costs and a reasonable, but small, margin of profit.

Commencing about January 1, 1948, the defendant has attempted to monopolize the rendering business within and in the vicinity of Little Rock by offering and paying unreasonably high prices for the raw materials of the business. Such prices were from 10% to 20% higher than a figure at which a reasonable manufacturing profit could be yielded; and in actual operation resulted in net unit losses to any renderer paying such prices. That course was pursued with the knowledge that the plaintiff would thereby be compelled either to pay such prices and undergo the losses inevitably resulting therefrom, or not to meet such competition and thereby to lose its sources of raw materials and be compelled eventually to discontinue its business. In its operation at such unjustified price levels, the defendant has offered in advertising to pay for dead animals at prices not justified by market conditions; and, on occasion, animals received by the defendant in consequence of such advertisement have not been paid for by it. In furtherance also of its design the defendant has on occasion sent unmarked and unidentified trucks to customers from whom the plaintiff has generally purchased raw materials and by representing to such customers that the trucks were being operated in behalf of the plaintiff, has purchased raw materials which were otherwise intended for sale to the plaintiff. The defendant, through its agents, has avowed its intention to drive the plaintiff out of business through freezing, or ruthless competitive, methods. In consequence of such acts and practices of the defendant, the plaintiff sustained a loss of $21,500 between January 1, 1948 and the institution of the action.

In addition to the foregoing allegations of an attempt to monopolize, the plaintiff also alleges that the defendant has entered into a combination and conspiracy in restraint of trade; in support of which it reavers all of the foregoing charges and also makes the following further claims. The defendant has combined and conspired with at least three other designated corporations and at least seven individuals who are officers, directors or employees of such corporations. All such conspirators have agreed among themselves to erect a device by which the plaintiff would be caused to purchase raw materials for its business at artificial and unreasonably high prices with the object and for the purpose of causing financial injury to the plaintiff as the de-

fendant's sole competitor, and with the ultimate purpose of destroying and stifling and eliminating all of the defendant's competition within the Little Rock business area. In furtherance of such conspiracy and combination, the defendant paid unreasonably high prices for raw materials, knowing that the plaintiff would be forced to meet such prices with consequent losses in its business, or fail to obtain a supply of materials for processing.

The defendant early moved to dismiss the complaint for failure to state a claim upon which relief could be granted. Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A. This motion was seasonably denied by Judge Trimble. Thereafter, and on March 5, 1952, at the instance of the defendant though eventually by stipulation, the defendant took the deposition of one Douglas G. Brown, a Director and the Secretary-Treasurer and Manager of the plaintiff. The deposition thus taken, with the exception of a few concluding questions of a clarifying character, includes interrogation in behalf of the defendant only. The testimony was taken adversarily and in the way of an unfriendly examination of a hostile witness. It has been transcribed and now constitutes a part of the record in the case. Brown testified, in part, as follows:

The plaintiff was incorporated in 1946 with an authorized capitalization of $30,000 and a paid in and issued capital of $14,000. It commenced business about April 7, 1947. It claims damages for various periods of time between January 1, 1948 and December 31, 1951. While some of its fiscal years within that interval may have shown net gains, during all such periods losses were sustained as the proximate result of the competitive practices of the defendant, without which the plaintiff would have received much higher profits. During the time in question the plaintiff has increased its inventory of equipment and plant facilities. At intervals within the period of two years before the taking of the deposition the plaintiff has paid for some raw materials prices higher than those paid by the defendant. The plaintiff has purchased raw materials from at least one truck operator who was a former employee of the defendant and has done so with knowledge that such materials were purchased by the truck operator from former vendors or customers of the defendant. The defendant on certain identified occasions has paid for specific raw materials prices higher than those paid by the plaintiff. But on several occasions and with numerous customers the plaintiff under the spur of competition has paid prices higher than those offered by the defendant and obtained the raw materials for which the two parties were in competition.

The witness in his deposition generally undertook to justify as defensible prices paid by the plaintiff for raw materials even where such prices exceeded those offered by the defendant and prevailed competitively to the extent of inducing sales to the plaintiff.

Very shortly after the transcription of Brown's deposition, the defendant tendered the present motion for summary judgment. In filing the motion it attached as an exhibit to it a transcript of the deposition. The motion is filed within Rule 56(b) and (c) of the Federal Rules of Civil Procedure, and is grounded on the assertion that "the pleadings and depositions of Douglas G. Brown * * * show that the defendant is entitled to judgment as a matter of law". The court considers that the foundation thus asserted for the motion is not well taken.

Attention is given first to the position taken by the plaintiff which invites the denial of the defendant's motion for summary judgment on the ground that no such motion may even be entertained in view of the earlier denial of the motion to dismiss the complaint on the ground of its failure to state a claim supporting recovery. That contention is without merit. Munn v. Robison, D.C.Ark., 92 F.Supp. 60; Deming v. Turner, D.C., 63 F.Supp. 220, affirmed 81 U.S.App.D.C. 113, 155 F. 2d 181, certiorari denied 329 U.S. 727, 67

S.Ct. 80, 91 L.Ed. 629. A motion to dismiss a complaint is to be allowed or denied on the basis alone of the legal sufficiency to support relief of the complaint itself. A motion for summary judgment, especially after a history comparable to the one now before the court, rests not alone upon the complaint, but by virtue of the language of the applicable rule, Rule 56(c), Federal Rules of Civil Procedure, also upon all of "the pleadings, depositions, and admissions on file, together with the affidavits, if any". Of these, the complaint is only a part.

In this case, Judge Trimble's order denying the motion for dismissal had necessarily to rest upon his conclusion that the complaint is adequate to state a claim on which relief can be granted. If, following the complaint, other pleadings or showings had come into the files conclusively demonstrating the invalidity of essential allegations of the complaint, then the motion for summary judgment could be well taken. So, while according to the order denying the motion to dismiss the effect of a controlling determination that the complaint alleges a claim supporting relief (vide infra) the court does not acknowledge any further present consequence to that earlier ruling.

The position in the Federal procedural system of the motion for summary judgment ought now to be recalled very briefly. Provision for the motion is made by Rule 56. Under subsection (c) of that rule the allowance of such a motion is made to depend upon an affirmative answer to the test expressed in the words "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 189 F.2d 213, 216, the allowability of a motion of the present character was considered and defined in the following language:

"A summary judgment is to be entered in a case if, but only if, the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. A summary judgment upon motion therefor by a defendant in an action should never be entered except where the defendant is entitled to its allowance beyond all doubt. To warrant its entry the facts conceded by the plaintiff, or demonstrated beyond reasonable question to exist, should show the right of the defendant to a judgment with such clarity as to leave no room for controversy, and they should show affirmatively that the plaintiff would not be entitled to recover under any discernible circumstances. Ramsouer v. Midland Valley R. Co., D.C.Ark., 44 F.Supp. 523, reversed on other grounds, 8 Cir., 135 F.2d 101. A summary judgment is an extreme remedy, and, under the rule, should be awarded only when the truth is quite clear. American Insurance Company v. Gentile Brothers Company, 5 Cir., 109 F.2d 732; Shultz v. Manufacturers & Traders Trust Company, D.C.N.Y., 1 F.R.D. 451; Drittel v. Friedman, D.C.N.Y., 60 F. Supp. 999; U.S. ex rel. Ryan v. Broderick, D.C.Kan., 59 F.Supp. 189. And all reasonable doubts touching the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment. Sarnoff v. Ciaglia, 3 Cir., 165 F.2d 167."

It seems unnecessary further to labor the point or to add to the foregoing discussion.

Accepting the foregoing test, the court is persuaded that the existence of a "genuine issue as to any material fact" has not been eliminated from this case by the deposition of the witness Brown. It is readily acknowledged that by a deposition or affidavit, and especially by formal pleadings, the sole plaintiff in an action may conclusively demonstrate the objective falsity of allegations of fact contained in his complaint. Such an event can unquestionably render imperative the summary denial of the relief prayed for in the complaint.

But no such demonstration has occurred in this instance. Brown is, indeed, one of the incorporators, the Secretary-Treasurer and the General Manager of the plaintiff corporation. He is not on that account the corporation itself. And the evidence discloses that he is not, as a stockholder, in strict corporate control of the concern. In an answer contained in the deposition, he accounts for 280 shares of stock in the corporation as outstanding. Of that he owns 70 shares. It is true that his son and daughter are shown each to hold 42 shares. In the aggregate, the family's stock constitutes the majority of the shares whose ownership is identified, and probably also of the entire outstanding capital. Nevertheless, Brown is still not the corporation.

The court is, therefore, of the opinion that, closely as Brown's relationship to the plaintiff approaches, it does not for the purposes of the present ruling constitute, identity with the corporate plaintiff. Accordingly, Brown's testimony is not now appraised in like manner as would be the testimony of a sole plaintiff taken under similar circumstances.

But even if the deposition of Brown be regarded as the deposition of the plaintiff, the court still considers that the record thus made is not sufficient to require or warrant the entry of a summary judgment. To possess that controlling consequence, such testimony would have to be accorded the effect of nullifying, and barring the plaintiff from any right to prove, the material allegations of the complaint. In other words, the plaintiff would have to be regarded as having made through Brown in his deposition a judicial admission abandoning the essential allegations of its complaint. And that consequence may not, as the court thinks, be attributed to the present deposition.

■ It is true that clear, intelligent, unequivocal statements of fact, unfavorable to his position taken in his pleading, made under oath during the taking of a deposition, by a party to an action in full possession of his mental faculties should be considered as conclusively established and binding upon him in the absence of an offer of any explanation or modification, or of a showing of mistake or improvidence, and that this consequence should be attributed to such statements for the purpose of ruling upon a motion for summary judgment. Harlow v. Laclair, 82 N.H. 506, 136 A. 128, 50 A.L.R. 973, with annotation commencing 50 A.L.R 979; Merrick v. Bridgeways, Inc., Mo.Sup., 241 S.W.2d 1015; Hamilton v. Patton Creamery Co., 359 Mo. 526, 222 S.W.2d 713; Holmes v. Egy, Mo.App., 202 S.W.2d 87; Hanser v. Lerner, Mo.App., 153 S.W.2d 806; Cable v. Metropolitan Life Ins. Co., 233 Mo.App. 1093, 128 S.W.2d 1123; Short v. White, 234 Mo.App. 499, 133 S.W.2d 1039; Ditsch v. Kansas City Power & Light Co., 233 Mo.App. 1163, 128 S.W.2d 1055; Pacific Fire Ins. Co. v. Donald, 148 Tex. 277, 224 S.W.2d 204; Halbert v. Lange, 313 Ky. 648, 233 S.W.2d 278; State ex rel. Ernest Fleckenstein Brewing Co. v. District Court of Rice County, 134 Minn. 324, 159 N.W. 755.

■ But the manner of taking, and the language, of the present deposition persuade the court that it does not have that precision and decisiveness which are requisite for the elimination of the right of a party to prove the allegations of his pleading. Upon several of the contentions of its complaint the plaintiff, upon the trial of this action, may well be confounded and embarrassed by the answers of Brown in his deposition. Those answers may easily prove to be significant evidence in the defendant's behalf. But the court is satisfied that they do not constitute either a judicial admission by the plaintiff of the fallacy of its allegations, or conclusive evidence of the unreality of its claims. The plaintiff still possesses the right, by any evidence within its legitimate reach, to establish the facts asserted in its pleading.

■ The defendant in argument insists that the plaintiff's pleading does not adequately allege an injury to the public in consequence of the actions charged against the defendant and on that account is fatally defective. Two answers to that position at once arise. Insofar as it asserts an

essential deficiency in the complaint, it has been ruled upon by Judge Trimble adversely to the defendant in his denial of the motion to dismiss. That conclusion inevitably follows from such denial. Secondly, it may well be suggested that the public injury is sufficiently alleged in the assertion of the defendant's machinations in furtherance of its design to secure a monopoly whereby the competition to which the public is entitled would be suppressed and destroyed.

Upon one contention this observation may be made. Pressed upon the court by the defendant is the thought that what is revealed by the complaint and by Brown's testimony is not the suppression of competition, but rather the existence of a very active and vigorous competition, which the cited statutes are designed to foster. This argument is unrealistic and naive, and altogether overlooks the realities of the situation. It must not be forgotten that one of the most potent techniques in the suppression of competition is competition itself. The ruthless competitive methods of an economically powerful industrial entity may be and often are oriented towards the eventual, and fairly early, destruction of a less sturdy competitor. Of such efforts the ultimate design is the elimination of competition and the erection and prosperity of monopoly. Therefore, it is not in order to insist that the demonstrated current existence of vigorous competition nullifies a charge of the prosecution of an effort, or the existence of a conspiracy, to suppress competition.

■ To the argument by the defendant that Brown as a witness failed in his deposition to prove the plaintiff's case, a sufficient answer is that he was under no necessity of making such proof. He had and has the right to unfold his facts in the ordinary way at the time of trial. Besides, the plaintiff did not take Brown's deposition. It was taken adversely. Under its circumstances, the plaintiff was under no necessity of making out its case in the deposition, or even of appearing during, or participating in, the taking of the testimony. So long as the deposition did not constitute a demonstration of the invalidity of the plaintiff's claim, its mere inadequacy to establish that claim has no persuasiveness.

■ The court holds only that the allegations of the complaint, already and correctly considered by Judge Trimble to be adequate to warrant the reception in evidence of facts supporting the allowance of relief, are not inevitably and conclusively nullified by Brown's deposition. That being true, there remain in the case under its pleadings genuine issues of material fact. And in the face of such issues a summary judgment may not properly be granted.

An order is being made accordingly.