**MAPLE DRIVE-IN THEATRE CORPORATION, Plaintiff,**

**v.**

**RADIO-KEITH-ORPHEUM CORPORATION (in Dissolution), Universal Pictures Company, Inc., Universal Film Exchanges, Inc., et al., Defendants.**

United States District Court
S. D. New York.
June 26, 1956.

See also D.C., 17 F.R.D. 226.

Robert H. Ruskin, Flushing, for plaintiff.

Adolph Schimel, New York City, for defendants, Saul Friedberg, New York City, of counsel.

PALMIERI, District Judge.

Defendants Universal Pictures Co., Inc., and Universal Film Exchanges, Inc., move for partial summary judgment in a treble damage action brought pursuant to the Anti-trust laws. 15 U.S.C.A. §§ 1–7.

Plaintiff is the operator of the Maple Drive-In Theatre (Maple), an outdoor motion picture theatre located on Route 30, Circleville, Pennsylvania. The defendants involved here are producers and distributors of Universal motion pictures.

The complaint alleges that the defendants have engaged in a nation-wide conspiracy to restrain and monopolize the exhibition of motion pictures. Pursuant to this conspiracy, they are claimed to have discriminated against independent

exhibitors and particularly drive-ins such as the plaintiff in order to favor their affiliated exhibitors and other theatre chains in the licensing of motion pictures. As part of this conspiracy, defendants Universal are alleged to have employed unreasonable clearance and bidding arrangements for licensing first-run pictures which forced the plaintiff to compete disadvantageously with favored exhibitors not actually its competitors.

The complaint covers a period beginning in 1949, when plaintiff entered the business, and ending in October, 1954, the date the action was begun. The motion for summary judgment, however, is confined to the period beginning in June 1953. Defendants contend that whatever the situation previously, there is no question that during the latter period, plaintiff received every concession asked for, without discrimination. It is conceded that beginning in June, 1953, defendants modified their leasing arrangements with Maple to comply with some of the plaintiff's requests. Even as to that period, however, there appear to be genuine issues of fact concerning defendants' good faith in their dealings with the plaintiff which impel the denial of this motion for summary judgment.

The controversy arises in the following setting. Route 30 is a main highway running through Pittsburgh, Pennsylvania. Maple Drive-In is located at a point on Route 30 approximately 16 miles east of the downtown section of Pittsburgh and roughly midway between the neighboring towns of Greensburg and McKeesport. Thus, any licensing arrangements have to be made with a view to the competitive relationship of Maple with indoor theatres in all of these cities.

It is undisputed that Maple competes for patrons with two other drive-in theatres located on Route 30. One of them, the Blue-Dell, is to the west of Maple, east of McKeesport. The Super-30 is situated to the east of Maple and west of Greensburg. Since none of these theatres is willing to show the same picture simultaneously with either of the others, both sides appear to have conceded in

practice and in argument that they must be licensed on the same basis. The practice of treating them as a group, however, gives rise to special problems in adjusting their run schedules with McKeesport and Greensburg. Not equidistant from those towns and therefore perhaps not equally competitive with them, they have applied for different types of schedule at various times. A main question, at least as to the period involved on this motion, appears to be whether the defendants' practice of treating all on the same basis as McKeesport and none as entitled to the preferences accorded Greensburg, is a reasonable method of handling the problem. Plaintiff contends that it is intended to discriminate in favor of Warner theatres in Greensburg.

Between 1949 and 1953, Universal licensed its films to Maple on a clearance schedule which permitted Maple to show first-run pictures fourteen days after their run in first-run theatres in McKeesport. Since McKeesport was subject to a 14-day clearance for the benefit of first-run theatres in Pittsburgh, the effect was to make plaintiff wait 28 days for first-run of pictures shown in Pittsburgh. Greensburg, located much farther from Pittsburgh than McKeesport, has always operated on schedules giving it approximately the same run as Pittsburgh.

In June, 1953, pursuant to a request by the Blue-Dell for equal status with McKeesport's first-run houses, Universal instituted a system of competitive bidding among the three Route 30 drive-ins. This system awarded the winning bidder an exclusive first-run engagement. Plaintiff, arguing that the drive-ins were not in substantial competition with McKeesport, contends that this system was nevertheless unreasonable. It claims that the only reasonable arrangement would have been to give the drive-ins open booking, that is, to have eliminated the requirement that either they or McKeesport be granted an exclusive engagement. It argues that the competitive bidding arrangement was initiated and operated with a view to continuing the

conspiracy to favor Warner theatres in Greensburg and McKeesport.

Defendants maintain that the assertions in plaintiff's affidavits are sham and conclusory and fail to present a genuine issue of fact. If this contention could be accepted, summary judgment in defendants' favor would be indicated.

Plaintiff has submitted no evidence tending to show that the first-run McKeesport theatres benefited specially from the competitive bidding nor that Maple suffered by comparison with them. Nor has it substantiated its contention that the drive-ins and the McKeesport theatres were not competitive. The theatres were close enough together to suggest, as a matter of common sense, that they did compete for customers. Seven years ago, this Court found that the competition between drive-ins and indoor theatres generally was slight. United States v. Paramount Pictures, Inc., D.C.S.D.N.Y.1944, 85 F.Supp. 881, *on remand from the Supreme Court*, 1948, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260. But it may be doubted whether the same general rule prevails today. A survey submitted by plaintiff showing that a substantial percentage of Maple Drive-In patrons came from the vicinity of Greensburg and McKeesport, adds little to the contentions of either side, since there is nothing to show whether or not these were the same patrons who attended the indoor theatres.

Even assuming, however, that the drive-ins and McKeesport were in substantial competition, plaintiff has raised an issue of fact as to defendants' good faith in initiating and operating the competitive bidding arrangement. Plaintiff has submitted evidence that at least during 1953, confirmation of its winning bids for the pictures ordinarily was delayed by defendants until past the date when the pictures were to have become available. Its allegation that this practice was intended to afford unwarranted protection to the earlier runs in Greensburg is substantiated by evidence that in at least one instance, this permitted a Warner theatre in Greensburg to show a

picture, free of competition, on a date when it should have become available to the plaintiff. Plaintiff also submitted a sworn statement that during the competitive bidding period, Maple paid substantially more for first-run features than did the Warner theatres in McKeesport. Statements in correspondence of defendants' agents, though equivocal, indicate that at least one consideration in instituting the system was protection of Warner theatres in Greensburg. And the fact that the competitive bidding system was discontinued contemporaneously with the institution of this action, while not evidence of its impropriety, tends to refute defendants' claim that no other reasonable alternative was available to them.

Viewed in the light of plaintiff's charges of a continuing conspiracy, the evidence precludes a determination, solely on the basis of the apparent competition between McKeesport and the drive-ins, that the competitive bidding system was innocuous. Defendants concede that the conspiracy charge cannot be resolved on this motion. They ask, in effect, that assuming the existence of a conspiracy prior to 1953, the Court rule that it was terminated, insofar as any impact upon the plaintiff is concerned, by the initiation of competitive bidding. Without intending to imply that parties to a conspiracy may not abandon their illegal practices in good faith and of their own accord, I must conclude that it would be inappropriate to reach this conclusion at this time. The Supreme Court has recognized the potentiality of competitive bidding as a means of restraining rather than enlarging competition in the exhibition of motion pictures. United States v. Paramount Pictures, Inc., 1948, 334 U. S. 131, 161 ff, 68 S.Ct. 915, 92 L.Ed. 1260. The opinion in the Paramount Case does not permit a conclusion that competitive bidding per se, even among competitors, is inconsistent with a continuing attempt to discriminate. The reasonableness of the system must be determined from the manner in which it was operated, the intent of the parties and its actual ef-

fect on the plaintiff. Proof that the defendants had been engaged in a conspiracy to discriminate against the drive-ins prior to 1953 certainly would be relevant in evaluating their conduct subsequent to that time.

Defendants requested on the argument that even if the motion for partial summary judgment were denied, the Court stipulate that no issues of fact remained as to certain questions in the case. They concede, for example, that an issue has been raised concerning the delays in 1953 but protest that plaintiff has introduced no evidence showing that they continued in 1954. They would also have the Court find, as a matter of law, that there was substantial competition among the drive-ins and the indoor theatres in McKeesport. I do not feel justified in foreclosing the trial court from accepting proof on this issue. Plaintiff's evidence concerning delays in 1953 is based on records of the defendants produced for its inspection. Plaintiff has not suggested that it has no similar records concerning the year 1954, and it would seem that if the records showed such delays in that year, it should have produced them. Nevertheless, defendants' failure to deny that these delays continued suggests that there may be such evidence as to 1954.

■ I have already indicated my view that a lack of competition among McKeesport and the drive-ins has not been substantiated. Nevertheless, I believe the trial court should be left free to accept any evidence bearing on the total competitive situation among theatres in the Pittsburgh, Greensburg, McKeesport area for the whole period put in issue by the complaint.

■ Plaintiff has moved to require the defendants to submit further answers to seven of eleven interrogatories submitted to the defendants and previously sustained against a motion to vacate by order of this Court dated October 15, 1955. As to interrogatories 2, 5, and 7b, plaintiff's objection that the questions have not fully been answered must be sustained. If some of the information

requested is unavailable to the defendants, they should say so specifically. The remaining answers are adequate. It is not necessary that letters and documents be individually identified to permit plaintiff to move for their production. (Interrogatories 8, 9). Nor can defendants be compelled to serve further answers merely on plaintiff's insistence that they must have records of a sort which they deny possessing. If plaintiff believes that certain records contain the desired information, it may move for their production. (Interrogatory 7a). Defendants need not identify the persons who cooperated in preparation of the answers to these interrogatories. Plaintiff is free to serve further interrogatories if it seeks additional information concerning persons with knowledge of the relevant facts. (Interrogatory 11).

Defendants' motion for partial summary judgment is denied. Plaintiff's motion to compel further answers to interrogatories is granted in part and denied in part.

Settle order on notice.