**WILLIAM GOLDMAN THEATRES, Inc.,**

v.

**TWENTIETH–CENTURY FOX FILM CORPORATION, Fabian Theatres, Jay Emanuel and Key City Theatres, Inc.**

**Civ. A. No. 21077.**

United States District Court
E. D. Pennsylvania.

Feb. 11, 1957.

Edwin P. Rome, Philadelphia, Pa., for plaintiff.

Speiser, Satinsky, Gilliland & Packel, Philadelphia, Pa., for Jay Emanuel.

Arlin M. Adams (of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa.), for 20th Century Fox Film Corp.

Thomas D. McBride, Philadelphia, Pa., for S. H. Fabian.

GANEY, District Judge.

Prior to May 30, 1956, there were five first-run moving picture theatres in Reading, Pennsylvania. They were as follows: Warner, Loew's Colonial, Embassy, Astor and Park. The Warner was operated by Stanley Warner Management Corp. and showed pictures made by Warner Bros. Loew's Colonial was managed by Loew's, Inc. and displayed films released by Loew's Inc., United Artists Corp., Universal Pictures, Inc., RKO Radio Pictures, Inc., Walt Disney Productions and some by Columbia Pictures. The Embassy, under the control of Fabian Theatres, exhibited two-thirds of the movies made by Twentieth-Century Fox Film Corporation ("20th-

Century Fox"), Paramount Pictures, Inc., and Columbia Pictures Corp. The Astor and Park Theatres, managed by Jay Emanuel, divided the remaining products between them.

For a period beginning May 30, 1956, the plaintiff, an operator of a chain of motion picture theatres in Pennsylvania, leased the Astor, a large favorably located theatre, for the purpose of exhibiting motion pictures to the public.[1] It was unable to operate for a month immediately following that date because it could not obtain first-run feature products. On July 23, 1956, plaintiff brought the action here involved under the antitrust laws. The defendants are 20th-Century Fox, one of the major motion picture distributors in the United States; Fabian Theatres, which controls approximately forty motion picture theatres, including the Embassy in Reading and the Colonial and State in Harrisburg, Pennsylvania; and Jay Emanuel, the chief executive officer of Key City Theatres, Inc., in which capacity he owns and controls a number of motion picture theatres in Pennslyvania, including the Park in Reading and the Senate in Harrisburg. Key City Theatres, Inc., was also named as a defendant. Paragraphs 7 and 8, the nub of plaintiff's complaint, aver:

"7. Plaintiff's Astor Theatre is eminently suitable for the exhibition of motion pictures on first run in Reading, Pennsylvania, and plaintiff is fully qualified to operate such first run theatre. For a number of years past, the said theatre divided the product of certain motion picture distributors, including the defendant Fox, with the Park Theatre owned and operated by the defendant Emanuel. This division or split of product was accomplished without resorting to the practice of so-called 'competitive bidding' between the two theatres. During this period of time, the defendant Fabian's

Embassy Theatre in Reading, Pennsylvania, did not seek to license pictures which fell on the Astor-Park Split.

"8. On May 30, 1956, when plaintiff took over the operation of the Astor Theatre, Emanuel refused to continue the division of product which had formerly existed between the Park and Astor Theatres, but combined and conspired with Fox and Fabian in an attempt to limit and restrain plaintiff's ability to compete in Reading and towards that end brought into effect the device of 'competitive bidding' for licensing motion pictures in Reading in an effort to deprive plaintiff's Astor Theatre of a proper, fair supply of first run pictures and to enable Fox to exact excessive film rental from plaintiff. Fox has, as a result, refused to license its pictures in Reading to plaintiff unless plaintiff would comply with the 'competitive bidding' system."

As an example of how the requirement of "competitive bidding" had prevented it from obtaining first-run items, plaintiff cites its failure to obtain the highly regarded motion picture and outstanding box office attraction, "The King and I." It also alleges that it failed because the defendants "maneuvered and manipulated the so-called competitive bidding" so that Fabian's Embassy was awarded "The King and I" in Reading and Emanuel's Senate was given the privilege of showing the film in Harrisburg. The complaint further alleges that the business of distributing and exhibiting motion pictures constitutes interstate commerce, that the conspiracy charged is in restraint of such commerce and that as a result of it plaintiff has and will continue to suffer severe financial loss.

20th-Century Fox, Jay Emanuel and Key City Theatres, Inc. have filed motions to dismiss on the ground that the complaint fails to state a claim upon

---

1. The Astor is the second largest theatre in Reading. It has a seating capacity of 2,251, which is 231 less than that of the Embassy.

which relief may be granted under the antitrust laws. 20th-Century Fox has also filed a motion for summary judgment. The reasons given why the complaint allegedly fails to meet the test are (1) the motive of 20th-Century Fox in requiring competitive bidding on the part of the exhibitors, and defendants' conduct with respect to the bidding for one particular picture in a single locality do not violate the antitrust laws, and (2) the complaint fails to aver an injury to the public.

 As for the first reason, defendants are apparently under the impression that the mere requirement of competitive bidding for a product prevents conduct and dealings involving that bidding from coming in conflict with the antitrust laws. That is not the law. See United States v. Paramount Pictures, Inc., 1948, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260; Maple Drive-In Theatre Corp. v. Radio-Keith-Orpheum Corp., D.C., 153 F.Supp. 240. We do not read the complaint as involving just one motion picture. The averment concerning the picture "The King and I" is similar to an allegation of an overt act under an indictment for conspiracy. By making such an averment, the plaintiff is not precluded from showing additional incidents. That the conspiracy was of a local nature will not for that reason put it beyond the reach of the antitrust laws. United States v. Crescent Amusement Co., 1944, 323 U.S. 173, 183–184, 65 S.Ct. 254, 89 L.Ed. 160; William Goldman Theatres v. Loew's Inc., 3 Cir., 1948, 150 F.2d 738, 744; White Bear Theatre Corp. v. State Theatre Corp., 8 Cir., 1942, 129 F.2d 600, 605.

 In answer to defendants' second reason, it is our opinion that the complaint sets forth facts from which it can be inferred that the public interest was injured by defendants' conduct. The public is interested in the preservation of free competition. And when competition is restrained by means declared unlawful by the antitrust laws, the interest of the public is harmed. Apex Hosiery Co. v. Leader, 1940, 310 U.S. 469, 491–493, 60 S.Ct. 982, 84 L.Ed. 1311; William Goldman Theatres v. Loew's, Inc., supra, 150 F.2d 743. It is not necessary that the complaint aver that the public has been injured as the result of defendant's conduct. "While detail is not necessary, it is essential that the complaint allege facts from which it can be determined as a matter of law that by reason of intent, tendency, or the inherent nature of the contemplated acts the conspiracy was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce." Feddersen Motors v. Ward, 10 Cir., 1950, 180 F.2d 519, 522. Also see Southern Rendering Co. v. Standard Rendering Co., D.C.E.D.Ark. 1953, 112 F.Supp. 103, 109.

 Finally, 20th-Century Fox argues in support of its motion for summary judgment that its deposition of William Goldman, president of plaintiff, fails to set forth a cause of action against it. By this argument we take it that this defendant means to say that plaintiff will not be able to substantiate the claim made in the complaint. From our reading of the deposition it seems apparent to us that William Goldman, through lack of personal knowledge, will be unable to supply all the facts necessary to prove plaintiff's case. He admitted that he obtained knowledge of some of the facts in conversations with other persons. The testimony of those other persons may be sufficient to supply the pertinent facts. There is no burden on plaintiff to establish his case in a pre-trial deposition. "So long as the deposition did not constitute a demonstration of the invalidity of the plaintiff's claim, its mere inadequacy to establish that claim has no persuasiveness." Southern Rendering Co. v. Standard Rendering Co., supra, 112 F.Supp. 109. Although a jury may not draw the same inferences as William Goldman does from certain facts, up to this point he has not "talked" the plaintiff out of a lawsuit.

Accordingly, the motions to dismiss the complaint and the motion for summary judgment will be denied.