AUGUSTA HERRON v. COOLSAET BROS. AND MARYLAND CASUALTY COMPANY.[1]

April 4, 1924.

No. 23,672.

**Decedent was employe of contractors on city work.**

A firm contracted with a city to construct sewers. Contract forbid subletting of any part of work without consent of city. A member of firm agreed with Fontaine that he, having a team and wagon, could haul pipe from car to places on streets at 50 cents per ton. Fontaine reported this to his friend Herron, who also had team and wagon, and these two men agreed to work together 50-50. They reported for work and the member of the firm, being informed of their plan to work jointly, permitted them to proceed and gave directions, and, while Herron was hauling a load of pipe along paved street, he fell from his wagon, causing death. *Held* that Herron was an employe of the firm.

Upon the relation of Augusta Herron the supreme court granted its writ of certiorari directed to the Industrial Commission to re-

[1]Reported in 198 N. W. 134.

view its decision in denying compensation in an action brought by relator as widow of William Herron, employe, against Coolsaet Bros. employer and their insurer. Reversed.

*H. O. Chommie, Julius J. Olson* and *Rasmus Hage*, for relator.

*Barrows & Metcalf*, for respondent.

WILSON, C. J.

Certiorari to review decision of the Industrial Commission refusing compensation to petitioner as the widow of William Herron, deceased.

Coolsaet Bros. contracted with the city of Thief River Falls for the construction of certain sewer work. Alphonse Fontaine and William Herron lived in that city and each owned a team and wagon and apparently supported themselves and their families by the use of such teams and wagons as opportunity offered. Each was about 69 years old. The one could not read or write, and the other could read and write but little. Neither owned any other property and neither had ever taken work as a contractor.

These two men were out of work and they sought an opportunity to work for Coolsaet Bros. They saw Remie Coolsaet, a member of this firm, on the opposite side of the street from them, and Fontaine left Herron and crossed over to Coolsaet and talked to him about hauling sewer pipe from cars on the track to a place where it was required in the streets, and he said he would haul the pipe for 50 cents a ton and Mr. Coolsaet assented. Fontaine reported to Herron. They agreed to work jointly and equally in doing the work, but Herron was unknown to Coolsaet Bros. until the next day when both men with teams reported at the car to haul pipe. Mr. Coolsaet then asked Fontaine if he had two teams and was told in substance that Herron and Fontaine were going to work 50-50. Fontaine's version is in substance this: He (Herron) no work for me, I no work for him; we both work for Coolsaet Bros. unloading tile by the ton.

The circumstances which may reflect upon the question as to whether these men were independent contractors or employes are: The contract with the city prohibited the contractor subletting any

part of the work without the consent of the city and the city was not asked to consent to the arrangement with Fontaine to haul tile. Herron was permitted to participate in the work the same as Fontaine. By conduct of the parties his presence and work had the approval of Coolsaet Bros. The hauling of the tile had to be co-ordinated with the work of digging the sewers and if delay in delivery was made the work of the contractor would be delayed. This element was necessarily under the control of Coolsaet Bros., who also exercised control as to how the tile should be loaded in the wagons and where they should be unloaded. They had a blue print showing where various sized tile were to be used, but this they retained. Mr. Coolsaet said that these men were to stand half the breakage, if the breakage was heavy, and that his firm was to stand half—this gave the firm a financial interest justifying some control.

While engaged in this work and while hauling a load of pipe upon a paved street, Mr. Herron fell from his wagon, resulting in his death.

Petitioner brought this action for compensation and the same was tried before referee Charles S. Allbright of the Industrial Commission. The referee made findings of fact and awarded compensation. The employers and the insurers appealed to the Industrial Commission which, upon the record of the referee, reversed the decision of the referee, because it concluded that Herron was not an employe of Coolsaet Bros., but on the contrary was in the performance of an independent contract job under arrangement with Fontaine. This decision is now before us for review.

This case was argued and submitted upon the theory that there is no substantial dispute as to the facts and that the record presents, as a question of law, the inquiry as to whether the deceased at the time of injury was an employe of Coolsaet Bros.

The arrangement was made with Fontaine. He arranged with Herron, and Coolsaet Bros. were informed by Fontaine that Herron was in on the work 50-50 with him. With this information Herron was accepted on the work and given directions. He was accepted the same as Fontaine and we are of the opinion that they both held

the same relation toward Coolsaet Bros. The contract of employment of Herron by Coolsaet Bros. may be and fairly was expressed by conduct. It is clear that neither of these men held any different relation with Coolsaet Bros. than the other.

The original agreement between Coolsaet Bros., whom we will refer to as the employer, and Fontaine, is construed by us as one of employment. The employer made these arrangements conscious of the provision of the contract forbidding them subletting any part of the work. This contract as evidenced by the record did not provide that the employe would haul all the pipe required on the work nor did it contain an agreement that the employer would permit him to haul all the tile. On the contrary, the language of the contract as well as the surrounding circumstances compel the conclusion that this was an employment for work to be paid for by the ton and not by the hour or day—it was a relation that was susceptible to termination by either party at any time and was to continue so long as mutually satisfactory. It was extremely informal and would be equally indefinite if construed as a contract for independent work. The pipe was shipped intermittently and when none was there to be hauled the employe was at liberty to work elsewhere. The mere fact that he was to be paid by the ton is not controling.

This court has held that where a man delivers coal with his own horse, harness and wagon, but with a box on the wagon owned by the employer, the relation of master and servant exists. Waters v. Pioneer Fuel Co. 52 Minn. 474, 55 N. W. 52, 38 Am. St. 564. This case was followed in Dunn v. Reeves Coal Yards Co. 150 Minn. 282, 184 N. W. 1027, where the employe provided his own truck and delivered coal by the ton. About the only difference in that case and this is that in that case the man who delivered the coal collected for it. The matter of control was the same. If the relation of master and servant existed in the one it should in the other.

We think it plain in this case that the employer did in fact possess the power to control the employe in respect to the transactions out of which the injury arose, and, if so, the relation of master

and servant existed. State ex rel. V. & R. L. Co. v. District Court, 128 Minn. 43, 150 N. W. 211. A portion of the exception as to who are not contractors or subcontractors in section 30, chapter 82, p. 110, Laws 1921 says: "nor one who does what is commonly known as 'piece work' or in any way where the system of employment used merely provides a method of fixing the workman's wages."

It is plain therefore that the fact that the payment is by the ton does not preclude the relation of employer and employe.

The essential element of an independent contractor is that he may do the work according to his own methods and without being subject to the control of his employment except as to the result of the work, and not the means by which it is accomplished. 2 Dunnell, Minn. Dig. § 5835. In the instant case the employe was not permitted to use his own method as to how the pipe was to be loaded, but he was subjected to the control of the employer in that respect, as well as in reference to place of hauling and distribution.

Neither Fontaine nor Herron was engaged in an independent employment or business. They were both old men; one unable to read and write; the other incapable of making even the very simplest calculation; both owning as their sole equipment, a team of horses and a wagon; both made their living by doing odd jobs around the city, taking such work as they could get; neither had ever taken any contract for profit, or engaged in the business of contracting. It is plain that they never contemplated, in this transaction, receiving anything but wages. When they worked together on a job, they simply helped one another to load and unload, and, occasionally, as in the present instance, helped one another to get work. They were ordinary, common workingmen and to designate them as independent contractors, or as subcontractors, because they got a job to haul sewer tile by the ton, rather than by the day, is to place a false dignity upon their status.

The ever present element of responsibility for the result of the work in the case of an independent contractor is absent in this case. These men could not proceed at their pleasure and convenience, but, on the contrary, the tile had to be in place in time to be used and installed immediately upon the construction of the ditch which was

constructed by machinery. The hauling of the tile had to be co-ordinated with the main work of the contractor. The age and type of these two men forbid the conclusion that the important element of responsibility for having tile in the right place at the right time was entrusted to them. The presence of Coolsaet and his personal contact with the work and his conduct in reference thereto, impel the inference that he alone was responsible for such consequences.

It is equally plain that the employer impliedly reserved the right to employ other men at any time, or to discharge these men at pleasure and they were at liberty to quit at any time. Their work was not specified either as to quantity or duration.

We do not assume to state a general rule or state definite facts by which the status of men working and contracting together can be definitely defined in all cases as employe or independent contractor. All the features of the relationship must be considered together. Perhaps the most important test is as to who has the right to direct, and when and how it shall be done, and who has the right to general control. The degree to which direction and control is exercised is not so important as the manifest right to direct and control where controversy may arise. In this case Coolsaet Bros. were in absolute control with power to terminate the relation instantly, and with equal authority to modify or change the method of performance.

It is urged that many of the cases cited by appellant are cases arising under the doctrine of respondeat superior, but we see no reason why the test in those cases is not also a proper test under the compensation act. Concededly liability may exist under the doctrine of respondeat superior when strictly speaking the relation of master and servant does not exist, but this possibility does not bar the analogous reasoning that is here permissible. If the employer is liable in the one case, it is because of the relation of the parties and that same relationshp may well exist for the purpose of the compensation act. The most controlling test is the right to control the acts of the other in respect to the transaction out of which

the injury arises. If this control exists the method of payment is of little importance.

The oral contract is to be considered in view of the circumstances under which it was made and the manner in which the work was performed. Moreover Coolsaet Bros. did assume supervision and control of the work and hence the conduct of the parties becomes an important element indicating their intention and their understanding of the contractual relation.

This court has adopted a liberal construction of the Workmen's Compensation Act which is remedial in nature and is inclined to solve doubtful questions in favor of the employe. We think this proper and consistent with the intention of the legislature in passing this law and having in mind the purpose of the law.

The facts in this case and the legal inferences to be drawn therefrom lead us to the conclusion that the petitioner is entitled to compensation.

The appellant herein is allowed $100 as attorney's fees incident to the proceeding in this court, which will be included in the judgment for and in addition to the usual costs and disbursements taxed herein.

The decision of the Industrial Commisson is reversed with direction to take necessary action to determine the proper amount of compensation.