# JOHN AND MINNIE GOSSEN v. TOWNSHIP OF BORGHOLM AND ANOTHER.[1]

April 5, 1928.

No. 26,555.

**Workmen's compensation act must be liberally construed.**
1. The compensation law is a remedial and economic measure, establishing a public policy, which must be liberally construed to effectuate its true purpose.

**Test of partial dependency is whether defendants regularly derived special benefit from acts of employe.**
2. G. S. 1923, § 4275(4), defining a partial dependent as one "who regularly derived part of his support from the wages of the deceased workman at the time of his death and for a reasonable period of time immediately prior thereto" construed, in the light of the purpose of the law, with reference to subd. (3) of the same section, and *held* that the regular essential contribution need not be literally from money earned as "wages" but may consist of labor, the one making the contribution being an employe earning "wages" at the time of injury. The fundamental test is whether the dependents regularly derived substantial benefit, which constitutes contribution, from the acts of the employe.

Workmen's Compensation Acts—C. J. p. 40 n. 95; p. 61 n. 82.

See note in L. R. A. 1916A, 121; L. R. A. 1917D, 157; L. R. A. 1918F, 483; 13 A. L. R. 686; 30 A. L. R. 1254; 28 R. C. L. 770; 4 R. C. L. Supp. 1849; 5 R. C. L. Supp. 1561; 6 R. C. L. Supp. 1751.

Certiorari to review an order of the industrial commission denying compensation to relators for the death of their son, Norbert Gossen, while in the employ of the defendant township. Reversed.

*Donohue, Quigley & Donohue,* for relators.

*Lucius N. Foster, E. A. Linnee* and *G. L. Ware,* for respondent township and Travelers Insurance Company, its insurer.

[1] Reported in 218 N. W. 882.

Wilson, C. J.

Certiorari to review an order of the industrial commission denying compensation to the parents of Norbert Gossen, a 16-year old boy who suffered immediate death on Thursday, December 2, 1926, from an accidental injury arising out of and in the course of his employment by Borgholm township in Mille Lacs county for which he had worked three days. His weekly wage was $14.40.

The employe had always lived with his parents on a farm which they owned and operated. The parents were in poor health. Their farm and the personal property were mortgaged. They needed their son's help on the farm. The labor he contributed during the last year of his life was of the value of $50 per month. No actual payment of wages was contemplated or paid. He received clothing of the value of about $25 per year.

The facts are not in dispute. Compensation was refused upon the theory that partial dependency was not established and could not be shown because the employe never having received any wages could make no contribution therefrom. The specific facts must control the inference which follows as a matter of law.

The parents are included in the classification of those who may be dependents. G. S. 1923, § 4275(3). Subd. (4) of this section of the statute reads:

"Any member of a class named in subdivision (3), who regularly derived part of his support from the wages of the deceased workman at the time of his death and for a reasonable period of time immediately prior thereto, shall be considered his partial dependent, and payment of compensation shall be made to such dependents in the order named."

We have construed this statute as requiring substantial regularity of contribution as an essential element of partial dependency. Bartkey v. Sanitary Farm Dairies, 170 Minn. 159, 212 N. W. 175. We did not there discuss the characteristics of "wages." In Bengston v. Siems, 173 Minn. 498, 217 N. W. 679, the proofs failed to establish "regularity" of contribution and, like the Bartkey case, there was a finding to that effect by the commission. In the instant case

the question is one of law. Here we have no difficulty with "regularity" of contribution. Our problem is to determine whether the contribution must consist exclusively of money received for labor.

We have recognized the compensation act as a remedial and economic measure, establishing a public policy, which must be liberally construed to effectuate its true purpose. Herron v. Coolsaet Bros. 158 Minn. 522, 198 N. W. 134; Rouse v. Town of Bird Island, 169 Minn. 367, 211 N. W. 327. The word "wages" must be construed in the light of other provisions of the law and to the end that the law will reach its aim.

The compensation act says that " 'daily wage' as used in this act shall mean the daily wage of the employe in the employment in which he was engaged at the time of the injury." G. S. 1923, § 4325. Wages are the reward of labor. Under the statute, as we view it, the employe might be employed under terms that would permit his reward to be in something other than money. But in any event § 4325 indicates the thing to which the word "wages" as used in the act relates. The act contemplates "wages" as a reward for labor, but it does not contemplate the maintenance of its identity after going into the hands of the employe.

The claim is that the parents cannot be brought within the purview of the statute as to partial dependents. True, the employe had worked as an employe for only a period of three days. He had not received any "wages" from the employer. He had earned some. He of course had made no contribution to his parents in actual money which had been paid to him as wages. But that is a technical construction. Had the employe survived the injury he would have received compensation.

The spirit of the act is to provide a dependent a substitute at the expense of industry to make up in a reasonable degree for what he has been deprived of by the accident. Where an employe has not given material aid to those who naturally have a right to look to him for assistance there would be little justice to support a claim for compensation. On the contrary, where the employe has given material aid to such relative whether that aid be in the form of money or anything else of value regularly contributed within the

letter of the statute, it is the spirit of the act that loss incident to death should be compensable.

Where the dependent was wholly supported by the employe the statute does not provide that the support must have been out of the "wages" of the employe, and this court has refused to read such requirement into the statute. G. S. 1923, § 4275(3). State ex rel. Crookston Lbr. Co. v. District Court, 131 Minn. 27, 154 N. W. 509.

It is difficult to see why the legislature would intend to make a distinction as to the specie of contribution which goes to a partial dependent and that which goes to a person wholly dependent. There could be no reason for such distinction. Yet if we accept the construction urged by the respondents we have that result. In order to avoid absurd results we may look to the language of subd. (3) to get the meaning of subd. (4).

If the employe lived at home and worked for the employer and regularly turned all or a part of his earnings into the family purse for support of the family, compensation would follow. State ex rel. Fleckenstein Brg. Co. v. District Court, 134 Minn. 324, 159 N. W. 755; Pushor v. American Ry. Exp. Co. 149 Minn. 308, 183 N. W. 839. The fundamental test is whether the dependents derived substantial benefit, which constitutes contribution, from the act of the employe. The language used by the legislature which indicates that the support must come from "wages" cannot be followed literally. The term was doubtless used because generally speaking "wages" was one of the prominent elements considered in framing the law, and ordinarily "wages" would be the usual source from which the employe would make contribution. There is no logic or principle which would prompt the legislature to say that it should be the exclusive source. We cannot believe that the legislature intended to exclude from the operation of the act such a state of facts as here involved. If an employe had two sources of income, one from a salary and one from property, and he applied all his salary to a particular project but from his other income made regular contributions to his parents, could it be claimed that they are not dependents because they did not get support from the "wages?" We think not. Yet such would be the logical sequence to respond-

ents' theory. If other money may replace that which in fact is "wages," why cannot "wages" be replaced with anything of equal beneficial value which serves the purpose contemplated by the act? We think it can.

The employe performed substantial service with consistent regularity on the farm from which the parents received the benefits. They received income from the farm products which his labor helped to produce—a contribution as effectual and beneficial as if it had been a portion of "wages" paid by an employer as a reward for his labor. This contribution continued down to within three days of the accident. We think it met the requirement of the statute. We think that subd. (4) was not intended to require payment exclusively from "wages." Under the compensation act the essential "wages" are those earned at the time of injury. The preliminary contribution was in fact made to the parents but not from "wages." It was made by labor which if given to an employer would have produced "wages" with which the contribution could have been made. The labor so given was the equivalent of money. It answered the same purpose. A liberal construction of the act requires us to conclude that such a contribution, regularly made at the time of the accident and for a reasonable period of time immediately prior thereto, is a substantial compliance with the statute.

The labor having been contributed to within three days of the accident when he began earning wages under circumstances failing to indicate any intention to discontinue contribution in some form, we conclude that the contribution was being made at the time of the accident.

It is urged that the relation of master and servant did not exist. Perhaps not at that time, but that relation existed between the employe and the employer at the time of the accident. That relation supports this proceeding. Can it be claimed that had the employer agreed to give the employe a horse for his work that a compensable injury would not be compensated because of the absence of "wages?" In the application of the law to this case the presence of "wages" prior to the employment is of secondary importance.

It is also suggested that the parents had not agreed to pay for the son's labor and that it was, since he was a member of the family, presumptively gratuitous. Assuming, without deciding, such to be the case we need only suggest that most all contributions toward the support of others are intended as gifts without expectation of return. That is the very fact that makes a discontinuance thereof a loss to the dependents. They are primarily given in recognition of a moral duty, to furnish sustenance to a near relative— a duty now also imposed by law when the dependent might otherwise be destitute. G. S. 1923, § 3157. The element of gratuity was mentioned in Bartkey v. Sanitary Farm Dairies, 170 Minn. 159, 212 N. W. 175. It was to emphasize a special purpose instead of regularity indicating support within the law, and not as discrediting the gift element.

The father is bound to support his minor child. 5 Dunnell, Minn. Dig. (2 ed.) § 7302. But that does not destroy the existence of a contribution when the child contributed in a year labor of the value of $600 and received clothing of the value of $25. The father is as a matter of law entitled to the wages of his minor son, but that does not destroy the facts constituting partial dependency nor the effect of the contribution which has been taken away by this tragedy in employment.

We are of the opinion that the parents were partial dependents and that the regular contribution in labor fulfilled the requirement of the statute that the dependents derived part of their support from the wages of the deceased workman at the time of his death and for a reasonable period immediately prior thereto.

The decision of the commission is reversed with directions to award compensation to decedent's partial dependents. One hundred dollars attorney's fees are allowed to the relators.