## AGNES HALLSTROM v. C. F. HAGLIN & SONS COMPANY AND ANOTHER.[1]

May 8, 1931.

No. 28,450.

*A. M. Gunn* and *John R. Carey,* for relator.

*George Hoke* and *Nathan A. Cobb,* for respondent employer and Standard Accident Insurance Company, its insurer.

OLSEN, J.

The relator, Agnes Hallstrom, sought compensation for the death of her brother, Arvid Hallstrom, claiming that she was a dependent of her brother at the time of his death, under the workmen's compensation law. The referee and the industrial commission found that relator was not a dependent of her brother and denied compensation. Funeral expenses and doctor's and hospital bills had been paid by respondents. Whether the relator was a dependent of her brother at the time of his death was a question of fact to be determined by the industrial commission. If there is evidence which reasonably sustains the finding of the commission, we are bound thereby and should not set it aside.

[1]Reported in 236 N. W. 482.

Without attempting to recite all the evidence these facts appear: Relator is a single woman about 31 years of age. She and her brother came from Sweden to Winnipeg, Canada, in 1923. Relator worked there, doing housework, except for three months while at school. The brother also worked there. She testified, in general terms, that her brother assisted her financially in Winnipeg. In April, 1928, relator came to Minneapolis. The brother at the same time came to Grand Forks. She continued to do housework. Her wages, besides her room and board, varied from $25 per month to $16 per week, according to her testimony. In October, 1928, relator was ill for two or three weeks. The brother came to Minneapolis and obtained employment. After her illness she decided to go into the business of running a rooming house. In December she rented such a house at $70 per month and purchased the furnishings thereof for $1,000. She paid $400 in cash on the furnishings and gave a mortgage back thereon to secure the balance of $600. The $400 paid consisted of $300 which she had saved and $100 which her brother had sent to her from Grand Forks. She had $75 left after making the $400 payment. She had not asked her brother to send the $100 and did not need it then, as she had money of her own, and did not use the money sent by the brother until she so used in in buying the furnishings. Whether the $100 was a loan or a gift is not clear. The brother came with her to the rooming house and paid her $10 per week for room and board. In the spring of 1929 she worked out again for a short time and had someone else look after the rooming house. The rooming house venture did not pay but ran behind, and she made efforts to sell it. Her brother did not want her to sell and in May, 1929, agreed to pay her $30 a week to help keep the house going. The business then continued on that basis until the brother was accidentally killed in September, 1929. Within two weeks after the brother died relator relinquished the rooming house, turned it back on the mortgage, and again obtained employment in housework. Her own earnings, so far as appears, have been and are more than sufficient for her support.

On these statements, based on her own testimony, which is the only testimony as to the facts, we conclude there is sufficient evidence to sustain the finding of the commission that relator was neither wholly nor partially dependent upon the decedent for her support.

Perhaps the industrial commission could have been sustained if it had found in relator's favor; but it is for the commission and not the court to make findings of fact, and the findings as made are reasonably sustained. The evidence would justify the conclusion that decedent was interested in the success of the rooming house venture and contributed money for the business purpose of keeping the house going. So far as the evidence shows, there was no thought or intention by either party that any contribution should be made for the support of relator.

Affirmed.