# LAURITZ LARSON v. A. GUTHRIE & COMPANY, INC. AND ANOTHER.[1]

July 3, 1931.

No. 28,498.

*George E. Ericson,* for relator.
*F. C. Elston,* for respondent employer.

Holt, J.

Certiorari to review a decision of the industrial commission denying relator compensation.

Ernest Larson, 24 years old, a son of relator, met death while in the employ of respondent A. Guthrie & Company, in an accident in the course of and arising out of the employment. Relator, a farmer, claims compensation as a partial dependent. The referee found he was, but the commission, two to one, found:

"That at the time of the death of said Ernest Larson, and for many years prior thereto, neither the petitioner, Lauritz Larson, nor any other person derived a part of his support from the wages or services of said decedent, and that said Ernest Larson left no persons entitled to compensation as his dependents."

Respondents were therefore directed to pay $200 to the state treasurer pursuant to G. S. 1923 (1 Mason, 1927) § 4276. The finding quoted is challenged as contrary to the evidence.

[1]Reported in 237 N. W. 606.

The evidence shows that relator preëmpted 160 acres some 30 years ago, about six miles from Bagley. He has thereon fairly comfortable buildings for that vicinity—the original home being a one-room log house to which additions have been made from time to time. He is now 57 years old. His wife, a few years younger, is in poor health. The family now consists of a son 21 and a daughter 14 years old. The oldest son was accidentally killed a year before Ernest, and relator received $2,000 from the life insurance he carried. By the united labor of his family 23 acres of the land has been cleared and is cultivated. This and the rest of the farm is really too stony for farming; nor does it seem fit for hay land. So to keep a dairy herd, from which the family chiefly derived its support, an adjoining farm of 160 acres, having hay meadows and some cleared land for feed crops, has been rented for several years in the past. By these means and the insurance money mentioned relator now owns the farm, worth, aside from the buildings, five dollars an acre free of encumbrances. The buildings, farm machinery, tractor, separator, and automobile are of moderate value. Some $600 left of the insurance money is invested. He owes a bank a small amount and is indebted on some promissory notes he signed with his son Ernest.

Except for a month or two during the threshing season, Ernest lived and worked on the farm each year after he was old enough to work. His services were estimated at $50 a month. The father gave him small sums for spending and for clothes. Three or four days before his death he left home for temporary work, intending to return in time for haying. There can be no question but that relator in the past had received the value of his son Ernest's labor, except perhaps for two months each year. It must be realized that on land such as relator's, with a wife in poor health, his struggle for support might have failed had not his two older sons remained at home and contributed their services after attaining their majority. To assist regularly in improving and tilling a farm and maintaining a home thereon so as to feed and shelter the family must be considered labor from which the head of the family derives support. State ex rel. Fleckenstein Brg. Co. v. District Court, 134 Minn. 324,

159 N. W. 755. Whether the labor was contributed directly to that purpose or in wages working for others should make no difference so long as relator therefrom regularly derived part of his support or the support of wife and minor child. Gossen v. Township of Borgholm, 174 Minn. 227, 218 N. W. 882. It is true, the evidence is that relator treated his sons well, gave them some spending money, and had assisted in the acquisition of some property of their own (a threshing outfit, a clover huller, and second-hand Fords) and in so doing had signed notes with Ernest for the purchase price of machinery which were partly unpaid when Ernest was killed. It must be admitted that Tomlave v. Galena, 180 Minn. 289, 230 N. W. 652, would sustain a finding, had it been made, that relator was a partial dependent. But we are not the triers of fact, and recognize that inferences may be drawn from the record that relator did not derive support from Ernest's labor above what Ernest received by way of financial assistance from relator.

"If such were the fact, in no proper sense could it be said that the parents regularly derived any part of their support from deceased, or that they were dependent upon him." State ex rel. Fleckenstein Brg. Co. v. District Court, 134 Minn. 324, 327, 159 N. W. 755, 756.

However, unless manifestly opposed to the evidence, the finding as to dependency must stand. Bartkey v. Sanitary Farm Dairies, 170 Minn. 159, 212 N. W. 175; Bengston v. Siems, 173 Minn. 498, 217 N. W. 679. The assailed finding cannot be held manifestly against the evidence or to be without some substantial support.

Respondents cite Neubauer v. Levy, 252 Mich. 83, 233 N. W. 209; Dazy v. Apponaug Co. 36 R. I. 81, 89 A. 160; Interlake P. & P. Co. v. Industrial Comm. 186 Wis. 228, 202 N. W. 175. But it must be admitted that the Michigan and Rhode Island courts do place a less liberal construction on the term "partial dependent" in the workmen's compensation acts, worded much like ours, than we do. As to Wisconsin, the court in the decision above cited cites Milwaukee Basket Co. v. Wiecki, 173 Wis. 391, 181 N. W. 308, wherein State

ex rel. Fleckenstein Brg. Co. v. District Court, 134 Minn. 324, 159 N. W. 755, is seemingly approved.

The decision of the commission is affirmed.