LYAL F. LANGLAND, BROTHER OF JEROME K. LANGLAND, ·AND ANOTHER v. STATE DEPARTMENT OF HIGHWAYS.

85 N. W. (2d) 736.

October 25, 1957—No. 37,141.

*Miles Lord,* Attorney General, *Robert W. Mattson,* Deputy Attorney General, and *Edward J. Gearty,* Special Assistant Attorney General, for relator.

*Finstad & Ruenitz* and *John S. Ruenitz,* for respondents.

KNUTSON, JUSTICE.

Certiorari to review a decision of the Industrial Commission awarding compensation to petitioners as partial dependents of a deceased employee of relator.

On January 6, 1956, Jerome K. Langland, who resided at Wilder, Minnesota, was an employee of the Department of Highways of the State of Minnesota as an engineering aid, earning a weekly wage of $50.77. On that date he sustained personal injuries in the course of his employment, resulting in his death on January 7, 1956. A claim petition was filed, and the referee made an award to petitioners as partial dependents of the deceased employee. On appeal, the Industrial Commission affirmed.

The only question before us is whether the finding of the Industrial Commission that petitioners were partial dependents of the deceased employee is sustained by the evidence.

At the time of his death, Jerome K. Langland was 19 years of age. Petitioner Lyal F. Langland, aged 33 years, is the brother of Jerome, and petitioner Shirley K. Langland, aged 15 years, is his sister. Since the death of the mother of these three individuals in August 1953 Jerome and Shirley have lived with Lyal and his family, which consists of his wife and two children, aged 6 and 3 years. Lyal was appointed guardian of both Jerome and Shirley upon the death of the mother, the father having died about 12 years earlier.

At the time of the death of the mother, Lyal operated a comparatively large farm on which he had about 200 sheep. Jerome attended high school, graduating in 1955. During the time from the death of

their mother until his graduation from high school, he helped with the chores, worked in the garden, and helped generally with the farm work. He was furnished board and room by Lyal, for which he made no payment, but he did buy some of his own clothing. During the fall of 1954 and 1955, Jerome helped Lyal haul flax for one George Mann, for which Lyal was paid $80 each time, half of which he gave to Jerome, who used it mainly to purchase clothing.

In February 1954, all members of this household moved to a 5-acre tract of land at Wilder, Minnesota, which was owned jointly by them, apparently inherited from their parents. The move was made because Lyal could no longer handle the large farm. Lyal is partially disabled, having lost an arm while serving in the United States Army.

During the summer of 1955, after finishing high school, Jerome worked about 2½ miles south of Windom, Minnesota. On September 10, 1955, he began working for the Department of Highways of the State of Minnesota. He continued to live with Lyal during all this time, and he continued to help on the farm even after commencing work with the Department of Highways. On this 5-acre tract was kept an average-sized vegetable garden, yielding approximately a 3 months' supply of potatoes and other vegetables. During the year 1955, Lyal worked for George Mann on a 200-acre farm near Windom, from which he realized about $800 per year in wages, which he drew once a year. In addition to this amount he earned $40 for hauling flax, as was stated above, and he received a pension from the United States government for his disability, amounting to $273 a month. During the summer of 1955 he had his own land in corn and garden and had approximately 26 sheep, which he had in the country grazing. During the summer of 1956 he had his land in oats and grass for grazing his sheep, which he then also had in the country during the summer. After the death of Jerome, Lyal sold about 18 of the 26 sheep for the reason that he could no longer take care of them. At that time his wife was in the hospital, and she was not well at the time of the hearing. Lyal estimated that the work which decedent did for him during the time that he lived with him was worth about $30 or $40 per month above his keep. He testified that Jerome continued to do as much work after he began working for the highway department as he did before,

and, in addition thereto, he paid an average of $20 per month from his salary. This amount was paid to Lyal's wife, and on cross-examination Lyal stated that it was considered for board and room. He testified that the work Jerome did during the summer before he began working for the highway department probably would average about 2 hours per day and that the going rate for such work was about $1 per hour in the vicinity in which they lived. The only testimony as to how the money was spent was that the $20 per month paid by Jerome probably was used for purchasing groceries. Shirley was 15 years of age at the time of the death of Jerome. She attended high school and had no independent income of her own.

Under these facts, which are not seriously in dispute, the state claims that the evidence does not sustain a finding that petitioners were partial dependents of Jerome.

The applicable statutes are M. S. A. 176.111, subd. 3, which reads:

"A wife, child, husband, mother, father, grandmother, grandfather, grandchild, sister, brother, mother-in-law, father-in-law, wholly supported by a deceased worker at the time of his death and for a reasonable time prior thereto are considered his actual dependents and compensation shall be paid to them in the order named,"

subd. 4, which reads:

"Any member of a class named in subdivision 3 who regularly derived part of his support from the wages of a deceased worker at the time of his death and for a reasonable time prior thereto is considered his partial dependent and compensation shall be paid to such dependents in the order named,"

and subd. 17, which reads as follows:

"Partial dependents are entitled to receive only that proportion of the benefits provided for actual dependents which the average amount of wages regularly contributed by the deceased to such partial dependents at the time of and for a reasonable time immediately prior to the injury bore to the total income of the dependent during the same time; and if the amount regularly contributed by the deceased to such partial dependents cannot be ascertained because of the circumstances

of the case the commission shall make a reasonable estimate thereof taking into account all pertinent factors of the case."

Many of the applicable rules have been stated in former decisions of this court.

■ Whether petitioners were partial dependents of the deceased employee at the time of his death is a question of fact for determination by the Industrial Commission. If there is evidence reasonably sustaining that finding, it must stand.[1]

■ The compensation act is remedial and should be construed liberally to effectuate its purpose.[2]

■ Substantial regularity in contribution is essential to a finding of partial dependency.[3]

■ The regular contributions essential to a partial dependency need not necessarily be contributions in money but may consist of labor or other benefits. The test is whether the alleged dependents regularly derive substantial benefits from the act of the employee.[4]

■ The test of dependency is not whether the dependents could support life without the employee's contribution but whether they received contributions, as part of their means of living, with substantial regularity.[5]

In Larson v. A. Guthrie & Co. Inc. 184 Minn. 33, 237 N. W. 606, the facts are somewhat similar to those we have before us in this case. In that case the commission found that petitioners were not partial dependents. We affirmed. If the finding had been the other way, it would also have been affirmed under the familiar rule that we are not the triers of fact questions. The same is true of Tomhave v. Galena, 180 Minn. 289, 230 N. W. 652.

■ The state contends that the payment of $20 per month was for

---

[1]Hallstrom v. C. F. Haglin & Sons Co. 183 Minn. 334, 236 N. W. 482.

[2]Herron v. Coolsaet Bros. 158 Minn. 522, 198 N. W. 134; Rouse v. Town of Bird Island, 169 Minn. 367, 211 N. W. 327; Gossen v. Township of Borgholm, 174 Minn. 227, 218 N. W. 882.

[3]Bartkey v. Sanitary Farm Dairies, 170 Minn. 159, 212 N. W. 175.

[4]Gossen v. Township of Borgholm, 174 Minn. 227, 218 N. W. 882.

[5]State ex rel. Fleckenstein Brg. Co. v. District Court, 134 Minn. 324, 159 N. W. 755; Tomhave v. Galena, 180 Minn. 289, 230 N. W. 652.

board and room and did not constitute a contribution to petitioners. Even if that were true, there is ample evidence under the rules stated above to sustain the finding of the Industrial Commission. Jerome regularly made contributions in the form of labor, which Lyal testified were worth $30 to $40 per month above the cost of his keep. Shirley lived as part of the household and received a benefit from decedent's contributions in labor. The produce from the garden which decedent helped to raise was used by the group. The inference is permissible that the income from the sheep he helped tend and the crops he helped raise on the farm all went toward maintenance of the entire household. That Shirley was not dependent upon Jerome for a living is not the ultimate test, but, instead, the test is whether she received benefits from his contribution to the maintenance of the household. We think that the evidence sustains the finding that she did. The same is true of Lyal. The mere fact that he may have had enough income from other sources to maintain himself and his family does not deprive him of his status as a dependent if the contributions of Jerome were of substantial benefit to him. The evidence shows that the contributions of money and services went toward maintenance of the entire household. Section 176.111, subd. 17, anticipates the difficulty of assessing the exact value of such contributions and confers upon the commission authority to make a reasonable estimate thereof, taking into account all pertinent factors in the case. The amount of the award in this case is not before us. We think that the evidence sufficiently sustains the commission's finding of partial dependency under the rules announced above.

Respondents are allowed $150 attorneys' fees.

Affirmed.