**EMPLOYERS MUTUAL CASUALTY COMPANY, Appellant,**

v.

**Gola Harrison TAYLOR, Appellee.**
**No. 7677.**

Court of Civil Appeals of Texas.

Texarkana.

Nov. 2, 1965.

Rehearing Denied Nov. 30, 1965.

Royal H. Brin, Jr., John H. Hall, Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellant.

W. C. Hancock, Pittsburg, Woodrow Edwards, Mt. Vernon, for appellee.

DAVIS, Justice.

A workmen's compensation case. Plaintiff-appellee, Gola Harrison Taylor, a widow, sought benefits for the death of her

brother, William L. Harrison, against defendant-appellant, Employers Mutual Casualty Company, on the theory that Mrs. Taylor was a "dependent" upon her brother at the time of his death. The case was tried to a jury. The jury was unable to make a finding of fact as to whether or not Gola Harrison Taylor was a "dependent" of her brother, Mr. Harrison, at the time of his death. The trial court awarded a judgment in favor of appellee on the evidence, overruled appellant's motion for new trial, and from this judgment the appellant has perfected its appeal. It brings forward 2 points of error.

By the points, appellant says the trial court erred in failing to render judgment for appellant when there was no competent legal evidence of probative effect in the record that appellee was "dependent" on the deceased; and, in granting recovery to appellee when the jury had failed to find that she was "dependent" on the deceased, such "dependency" being by no means establishing conclusively as a matter of fact under the law.

### History

Appellee is an adult sister, 69 years old, of the deceased, William L. Harrison, age 65 at time of death, commonly known as "Jack". Appellee's husband died in 1958. Her husband was a retired Fire Marshal of Pittsburg, Camp County, Texas, where appellee has continuously lived since the year 1916. Appellee's husband had a disability retirement, and she drew about $33.33 per month until 1961, when there was about six months that she did not drawn anything. They later started paying $25.00 a month. For a while she drew $26.00 a month from the Department of Public Welfare as an Old Age pension. Mr. Harrison who had been divorced, moved in the house with appellee in 1949, where he continued to live until the date of his death on April 18, 1963, while in the course of his employment in Franklin County, Texas.

Appellee lived in a large house with her brother. Her mother lived there until June 3, 1961, at which time she passed away. After that, an Aunt moved in the house with them and was living there at the time of the death of Mr. Harrison.

Appellee has two children, one, a boy, who is married and has four children, and is employed at Lone Star Steel Company. He does not contribute anything to the support of his mother. She also has a girl, who is married and living in Dallas. She does not contribute anything to the support of her mother, but occasionally she gives her mother gifts. Mr. Harrison did not have any children.

Appellee had previously rented some rooms and took in some sewing for the public. She did not make much money, and beginning in 1961 she only did a few alterations, and testified that she had rented a room for a few weeks and had not collected more than $50.00.

There was testimony that her aunt gave Mr. Harrison a little money now and then, but there was no definite amount. Appellee's aunt lived there just like the rest of the family. She was handicapped, confined to a wheel chair, and could not get about. The money that was given to Mr. Harrison by the aunt can play no part in this case because there is no evidence to show what the money was given for, nor is it shown that the money was spent for the support of appellee. The evidence shows that appellee owed some money for a roof on the house in which they were living. The payments were $31.19 per month. She paid that out of the pension that she was drawing. That took most·of the pension for a time, and then when appellee started drawing $25.00 per month, it would take a little more. That would leave $26.00 a month while she was drawing the money from the Department of Public Welfare for her to live upon.

The testimony shows that Mr. Harrison paid all the household bills, including the

utilities of $25.00 to $26.00 per month, all grocery bills of about $25.00 per week, with a trip to the store almost daily to buy meats, etc. He paid the taxes and insurance on the home, and furnished a car as and when needed. Mr. Harrison owned two cars, one to use at his work, and one to stay at home. Appellee has never driven an automobile.

J. B. Duke, Store Manager for A & P Food Company, testified as follows:

"Q. Would you state your name, please, sir.

A. J. B. Duke.

Q. Mr. Duke, where do you live?

A. Pittsburg, Texas.

Q. And what is your occupation?

A. Store Manager for A & P Food Company.

Q. What kind of store did you have?

A. Retail food store.

Q. All right, sir. Mr. Duke did you know Jack Harrison during his lifetime?

A. Yes.

Q. Do you know Mrs. Gola here, his siter?

A. Yes, sir.

Q. Do you know where they lived in Pittsburg?

A. Yes, sir, I sure do.

Q. Where do they live in reference to your business, your grocery store?

A. Within a hundred yards of it.

Q. How long have you been the manager of this store?

A. About sixteen and a half years.

Q. Do you know whether or not Jack had lived with Miss Gola when he was single again?

A. Yes.

Q. Do you know about how long they had been living together that way?

A. Well, no, I don't know exactly; I know within the last six or seven years or so.

Q. Now, during that time I will ask you if one or both of them or either of them came to your store to purchase groceries?

A. Both.

Q. Did they come together?

A. Well once a week they would always come together. Then he would come in nearly every day during the week.

Q. On the trip they would make together once a week would they get a pretty good supply of groceries?

A. They got a pretty good sized bill at that time; and then he would come back through the week and get fill-ins, meat and soforth.

Q. Mr. Duke, do you have any idea as to approximately how much his bill would run a week there?

A. Oh, I would say around $25.00.

Q. Now, who paid for them? Did you ever check them out?

A. Oh, yes.

Q. Who paid for the groceries?

A. Jack.

Q. Who?

A. Jack.

Q. All right, sir. Did Miss Gola ever hand you the money herself?

A. At times she did, but usually she would turn around and give him the change.

Q. Mr. Duke, have you talked with anyone about this matter before today?

A. Yes.

Q. Well, who all have you talked to about it?

A. The insurance man.

Q. And did you talk to me about it?

A. Yes.

Q. Did you discuss it with me?

A. Yes.

Q. And you did discuss it with the insurance adjuster?

A. Yes.

Q. Did you give the insurance man a statement about it?

A. Yes."

Appellee filed a motion for judgment on the theory that the evidence showed that appellee was a "dependent" upon Mr. Harrison at the time of his death as a matter of law. Judgment was rendered in her favor.

### Opinion

A dependent is described in 64 T.J.2d, 256 as follows:

"A dependent is one who is sustained by another, or relies for support on the aid of another, who looks to another for support, and relies on another for reasonable necessaries consistent with the dependent's position in life."

It will be noted that Mr. Harrison was not survived by a wife. He had no children, mother, father, or stepmother. Art. 8306, Sec. 8a., Vernon's Ann.Civ.St., reads, in part, as follows:

"The compensation provided for in the foregoing section of this law shall be for the sole and exclusive benefit of the surviving * * * dependent * * * sisters of the deceased employee; * * * provided the right in such beneficiary or beneficiaries to recover compensation for death be determined by the facts that exist at the date of the death of the deceased and that said right be a complete, absolute and vested one. * * * "

All of the evidence hereinabove enumerated was offered without anything being offered to the contrary by the appellant. The evidence shows that Mr. Harrison furnished to appellee most, if not all, of the actual necessities of life. She "depended" on him for everything. The law provides for compensation to the surviving sister, but she must show the "dependency" before compensation can be recovered. The statute does not define the term "dependent", but the relation must be that such person claiming compensation must rely on the support of another. It was shown that appellee was relying upon this support at the very time her brother was killed. For many years prior thereto he had been paying the taxes, the premiums on the insurance on the house, had been buying and paying for all the groceries, and paying all the utility bills. It was shown that he occasionally gave the appellee some money, but it is not necessary that the contributions be shown to have been contributed in money alone. We hold that the evidence shows, as a matter of law, that the appellee was a "dependent" on Mr. Harrison at the time of his death. 62 T.J.2d 606, Sec. 62; 62 T.J.2d 607, Sec. 63; Postal Mut. Indemnity Co. v. Penn (Tex.Civ.App., 1942) 165 S.W.2d 495, W.R., W.O.M.

In the case of Croom v. Cochran, (Tex. Civ.App.), 379 S.W.2d 957, Writ of Error granted but later dismissed because of settlement, it was held that:

"One who is sustained by another, or relies for support upon the aid of another is 'dependent' for workmen's compensation purposes".

In the Croom case, there was an adult child who was mentally incompetent and

was a student at the Travis State School for the mentally retarded. The father, at the time the child was placed in the institution, signed a contract, obligating himself to pay $45.00 a month for the support, maintenance and treatment of said child. The decision was based on the case of Texas Employers Ins. Ass'n. v. Arnold, (Comm.App., opinion adopted by Sup.Ct. 1936), 127 Tex. 245, 92 S.W.2d 1019, in which the court said:

> "We well recognize that the question of dependency is generally one of fact to be determined by the trier of facts, and not by this court; but where, as here, there is no dispute as to the facts, *and they lead to a definite conclusion, it is our duty to announce that conclusion as a matter of law."* (Emphasis added)

■ The only question to be decided in this case is whether or not the question of "dependency" is one of fact to be decided by the jury; or, has it been proved as a matter of law. The question is relatively new as far as discussions are concerned by the Courts of Texas. But the question has been discussed by the courts of other states and the Federal courts. Many of the cases are: U. S. Fidelity & Guaranty Co. v. Britton, 88 U.S.App.D.C. 293, 188 F.2d 674; O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S. Ct. 470, 95 L.Ed. 483; Havre De Grace Fire Works Co. Inc. v. Howe (1955), 206 Md. 158, 110 A.2d 666; Wheeling Steel Corp. v. Morates (1963), 120 Ohio App. 315, 202 N.E.2d 317; In Re Est. of Hardaway (1960), 26 Ill.App.2d 493, 168 N.E.2d 796; Bruce v. Bruce (1955), 100 Ohio App. 121, 130 N.E.2d 433; Paul Spellman, Inc. v. Spellman, Dis.Ct. of App.Fla. (1958), 103 So.2d 661; Lighthill v. McCurry (1963), 175 Neb. 547, 122 N.W.2d 468; Robberson Steel Co. v. State Industrial Court, Sp.Ct. of Okl. (1960) 354 P.2d 211; International Harvester Co. v. Harris, Sup. Ct. of Oklahoma (1954) 272 P.2d 1046; Air Castle, Inc. v. Industrial Commission (1946), 394 Ill. 62, 67 N.E.2d 177; Mid-State Paving Co. v. Farthing (1958), 233 Miss. 333, 101 So.2d 850; Langland v. State of Minnesota (1957), 250 Minn. 544, 85 N.W.2d 736; and, Magnolia Construction Co. v. Dependents of Stovall, Sup.Ct. of Miss. (1964), 168 So.2d 297. These cases all hold that the question of dependency is a question of fact to be decided by the trier of the facts. They all hold that if there is any evidence to support such finding, the judgment must be affirmed.

■ The appellant offered in evidence the fact that Mr. Harrison did not claim the appellee as a "dependent" at the place of his employment. This testimony was not admissible, although the appellee did not object to same at the time it was offered. Traders & General Ins. Co. v. Stanaland, (1947), Tex.Civ.App., 202 S.W. 2d 702, W.R., N.R.E. There was no further testimony offered by the appellant, other than that hereinabove set out, to show that the appellee was not a "dependent" upon Mr. Harrison at the time of his death. The question of whether or not appellee, a sister of Mr. Harrison, was a "dependent" upon Mr. Harrison under the Workmen's Compensation Law at the time of Mr. Harrison's death is a question of fact. The evidence as enumerated in the History and in the Opinion is sufficient to hold that the appellee was a "dependent" upon her brother, Mr. Harrison, at the time of his death as a matter of law. Any other finding by the trier of facts would have to be reversed. Therefore, the fact question has been proved as a matter of law. Texas Employers Insurance Ass'n. v. Arnold, supra. The appellee depended upon her brother for all the reasonable necessaries consistent with the appellee's position in life. 64 T.J.2d 256. These facts were shown to exist at the time of his death. 62 T.J.2d 607, Sec. 63. See, also, 62 T.J.2d 606, Sec. 62; 58 Am.J. 686, Sec. 163. The points are overruled.

The judgment of the trial court is affirmed.