**Russell Maurice HOUSER, deceased employee, by Glennice HOUSER, Respondent,**

v.

**DAN DUGAN TRANSPORT COMPANY, et al., Relators.**

**No. C7–83–1578.**

Supreme Court of Minnesota.

Jan. 25, 1985.

Gerald M. Linnihan, St. Paul, for relators.

Keith L. Miller, Moorhead, for respondent.

KELLEY, Justice.

The issue in this workers' compensation case is whether a grandchild of a decedent killed in an accident which occurred while he was in the scope of his employment was a "child" within the meaning of Minn.Stat. § 176.011, subd. 2 (1982) and, therefore, entitled to dependency benefits. The compensation judge held that the granddaughter was not a "child" and denied dependency benefits. The Workers' Compensation Court of Appeals reversed that decision and awarded dependency benefits. We affirm.

Russell Houser was killed on October 12, 1981, as the result of a two-truck collision which occurred while he was in the course and scope of employment as a truck driver for Dan Dugan Transport Company. Following his death his widow, Glennice Houser, filed a workers' compensation claim petition claiming dependency benefits for herself, a minor son then living at home, and her granddaughter, Nichole Houser. The employer admitted the dependency of the surviving spouse and the minor child, but contested the dependency of Nichole Houser.

Nichole Houser, almost three years old at the time of her grandfather's death, is the daughter of decedent's son, Timothy, and Joni Houser. Timothy and Joni were married on December 15, 1978, and were divorced a few months later in August of 1979. The divorce decree gave Timothy Houser custody of Nichole and provided that he maintain her support.

At the time of the divorce proceedings, Timothy determined that he could not properly care for Nichole and, in July 1979, Nichole came to live in the home of the decedent and Glennice Houser. The move was not a distant one since Timothy lived approximately one block away from his parents in the same trailer park.

Nichole has lived with her grandparents continuously since she was 10 months old. She was given her own bedroom in her grandparents' home and they provided her room and board. No formal agreement between Timothy and his parents was

reached as to the share each was to pay towards Nichole's maintenance. Rather, what support Nichole received from Russell and Glennice Houser was gratuitous. At no time did Russell or Glennice undertake to obtain legal custody of their granddaughter.

The record is vague as to the amount of money that Russell and Glennice contributed towards Nichole's support, but it is clear that this amount was substantial and that Timothy's parents did not seek reimbursement of the amounts from Timothy. Russell and Glennice claimed Nichole as a dependent on their 1980 federal and North Dakota income tax returns and Glennice continued to claim Nichole as a dependent on her 1981 and 1982 tax returns. Timothy claimed Nichole on his 1979 state and federal income tax returns.

Timothy did contribute towards the support of Nichole. He paid for Nichole's hospitalization insurance ($60/month) and occasionally paid for Nichole's babysitter ($80/month) when Glennice was working. Apart from these two contributions, however, Glennice and Russell paid for Nichole's needs.

While Nichole lived with her grandparents, she was visited on a daily basis by her father. Timothy ate supper with Nichole almost every day at his mother's house. Timothy also participated in some decisions regarding Nichole's welfare; most particularly, Timothy took part in the decision whether or not to send Nichole to preschool. Glennice, however, pays the preschool tuition fee.[1] Moreover, most of the discipline with respect to Nichole fell on the elder Houser's shoulders.

The record is devoid of evidence as to the exact amount of money that Timothy actually contributed. The majority of Nichole's support at the time of Russell's death and for a reasonable period prior thereto did come from Russell and Glennice Houser.

At all times material to this case, Timothy Houser, age 23, was employed full-time by the Interstate Sunflower Company. At the time of his divorce, Timothy earned $14,000 per year. In 1981, Timothy earned $17,000 and at the time of the workers' compensation hearing, Timothy was earning $20,500. Timothy possesses no physical or mental disabilities and was financially self-sufficient at the time of his father's death. In addition, neither Timothy nor Glennice can explain why Timothy did not or could not fully support his daughter.

Under the Minnesota workers' compensation law, minor "children" under the age of 18 years are conclusively presumed to be wholly dependent upon a decedent.[2] The primary issue for our consideration is whether a grandchild living with the decedent at the time of death should be included in the term "children" as used in Minn. Stat. § 176.111., subd. 1 (1982).

Section 176.011 is the definitional section of the Workers' Compensation Act. This section, subdivision 2, defines the term "child" as follows:

Subd. 2. *Child.* "Child" includes a posthumous child, a child entitled by law to inherit as a child of a deceased person, a child of a person adjudged by a court of competent jurisdiction to be the father of the child, and a stepchild, grandchild, or foster child who was a member of the family of a deceased employee at the time of his injury and dependent upon him for support.

■ It is evident that grandchildren are included within section 176.011, subdivision 2 and, accordingly, are afforded death benefits *provided* they are members of the family of the decedent at the time of the

---

1. This, of course, occurred after Russell's death.

2. Minn.Stat. § 176.111, subd. 1 (1982) provides, in pertinent part:

Subdivision 1. *Persons wholly dependent, presumption.* For the purposes of this chapter the following persons are conclusively presumed to be wholly dependent:

* * * * * *

(b) children under 18 years of age, * * *.

accident and are dependent upon him for support.[3]

Neither the compensation judge nor the Workers' Compensation Court of Appeals engaged in a reasoned analysis as to whether Nichole fit within a legal definition of "member of the family" or of being "dependent."[4] The Workers' Compensation Court of Appeals merely held that Nichole was a "member of the family" and "dependent" without reference to the definition of those terms. Indeed, the workers' compensation statute does not indicate a proper definition to be accorded either term. Moreover, workers' compensation decisions fail to discuss proper legal interpretations of those phrases. *See e.g., Chandler v. Minneapolis Star & Tribune,* 33 W.C.D. 525 (1980); *Jansen v. Mid-Continent Freight Lines, Inc.,* 23 W.C.D. 343 (1964).

In other connections, this court has defined "member of the family" to include all persons that the head of the household has taken into his/her home to share such comforts as the home may provide and toward whom the head of the household has assumed an attitude of par-ent, guardian or controller, particularly when there exists a blood or legal relationship. *See generally In re Estate of Tilghman,* 240 Minn. 494, 497, 61 N.W.2d 743, 746 (1953) (discussion relative to defining a "member of the family", in the context of discussing the applicability of the presumption that services rendered by a member of the family are gratuitous so as to preclude a claim for reimbursement). Other cases, usually arising in the automobile insurance context, cast light upon the proper construction of the phrase "member of the family". *See Van Overbeke v. State Farm Mutual Automobile Insurance Co.,* 303 Minn. 387, 227 N.W.2d 807 (1975); *Tomlyanovich v. Tomlyanovich,* 239 Minn. 250, 58 N.W.2d 855 (1953); *Firemen's Insurance Co. v. Viktora,* 318 N.W.2d 704 (Minn. 1982). These cases generally define the phrase "member of the family" as including those who dwell together under the same roof in a close and intimate family relationship under which the head of the household assumes the attitude of parent. Keeping in mind that words and phrases are to be construed according to their common and approved usage (Minn.Stat. § 645.08(1) (1982)), it is clear that in defining "member of the family"[5] we have

---

**3.** If a grandchild does not fit within this definition of "children," then the compensation statute provides an alternative recovery scheme that limits or precludes recovery in comparison with section 176.111, subdivision 1. Pursuant to Minn.Stat. § 176.111, subd. 15 (1982), a grandchild may recover limited benefits, provided the deceased employee left no widow or child or husband or parent and in fact the grandchild was wholly dependent on the deceased. Under Minn.Stat. § 176.111, subd. 3, 4 (1982), dependency benefits to a wife and child have priority over those available to a grandchild. Moreover, under Minn.Stat. § 176.111, subd. 20 (1982), workers' compensation benefits available to dependents cannot exceed in the aggregate an amount equal to the maximum weekly compensation for temporary total disability. In this case, the dependency benefits provided to the deceased's widow and minor child exhaust available benefits. Therefore, it is clear that if Nichole Houser does not fit within section 176.-111, subdivision 1, she will not receive any benefits under Minn.Stat. § 176.111, subd. 4, 20 (1982).

**4.** The compensation judge in holding that Nichole was not a "child" within the meaning of Minn.Stat. § 176.011, subd. 2 did not attempt to define either phrase. Rather, he relied on an apparent inconsistency in the compensation act. The compensation judge found that it was unreasonable to believe that the legislature intended a wholly dependent grandchild to collect survivor's benefits where no closer relative survived the decedent, Minn.Stat. § 176.111, subd. 15, and a partially dependent grandchild to collect survivors in the order named if closer dependents survived, Minn.Stat. § 176.111, subd. 20; whereas, in the instant case, the grandchild, only partially dependent, would be entitled to a conclusive presumption of dependency and entitled to full dependency benefits. The Workers' Compensation Court of Appeals rejected this interpretation. In our view there may be an inconsistency as pointed out by the compensation judge between Minn.Stat. § 176.111, subd. 2, and Minn.Stat. § 176.111, subds. 15 and 20. If so, the legislature might wish to manifest its intention with more specificity.

**5.** In some of the insurance cases the phrase "member of the household" was used. We have construed that phrase to be synonymous with "member of the family". *See Van Overbeke v. State Farm Mutual Automobile Insurance Co.,*

adopted in those insurance cases a definition that includes within its scope those who dwell together under the same roof in a close and intimate relationship. The definition adopted in that context, does not contravene the legislature's purpose that "members of a family" in some cases can include grandchildren, stepchildren and foster children. We conclude, therefore, that the insurance definition of "member of the family" is equally appropriate in construing "member of the family" as that phrase is used in Minn.Stat. § 176.011, subd. 2. Using that definition, it is clear that the overwhelming evidence in this case supports a conclusion that at the time of Russell Houser's death Nichole was a member of his family. She lived in her grandparents' home continuously since July 1979; she had her own bedroom there; all her food and clothing were provided by her grandparents; day to day discipline and training fell upon the grandparent's shoulders; substantial, if not practically all, support came to her from her grandparents. The elder Houser provided more than a day care center for Nichole. If Nichole had not been a grandchild, she probably would qualify as a foster child. The Housers provided a *de facto* family relationship for Nichole.

■ The more difficult question is whether Nichole was "dependent" on the deceased for support. At the outset it is obvious that this phrase is susceptible to several constructions. Were we to adopt a narrow view, the construction urged upon us by the appellants, we would hold a person was "dependent" if he or she received *all* support from the deceased employee or that such support was legally required. Using that definition, of course, Nichole would not be a qualifying dependent because clearly she did not receive all her support from her grandparents nor did

they have any legal obligation to support her—in this case the grandparent's support being gratuitous. Respondent urges that we adopt a broader construction of "dependent" that would only require that a grandchild derived support on a comparative quantitative basis. If that construction is adopted, it appears clear in this case that quantitatively Nichole received much more support from, and, therefore, was much more dependent on her grandparents than on her father. The workers' compensation statute does not define which definition is preferred. In contrast to the phrase "member of the family" where the legislature did delineate persons who might fall in that class, it did not modify or circumscribe the phrase "dependent upon the deceased for support". We, then, must choose a definition that appears to us to comport with the legislative intent. We gain some insight to that intent by noting that by failing to modify "dependent", the legislature may not have intended the claimant to be totally dependent.[6] Although the phrase "dependent on the deceased for support" as used in Minn.Stat. § 176.011, subd. 2 has never been construed by this court, we have construed "partial dependent" as used in Minn.Stat. § 176.111, subds. 3 and 4 (1982). In *Langland v. State Department of Highways*, 250 Minn. 544, 85 N.W.2d 736 (1957), we held "the test of dependency is not whether the dependents could support life without the employee's contribution but whether the dependents received contributions, as part of their means of living, with substantial regularity". *Id.* at 548, 85 N.W.2d at 739. In the absence of a more restrictive legislative definition, we choose to apply the *Langland* definition to this case even though it involves dependency rather than partial dependency. The record clearly supports the Workers' Compensation Court of Appeals

303 Minn. 387, 227 N.W.2d 807 (1975). Both constructions have been made without reference to the presumption that ambiguous words are defined most favorably to the insured.

**6.** *But see* Minn.Stat. § 176.111, subd. 15 and 20 (1982). An argument can be made, as was done by the compensation judge, that those two sec-

tions construed in connection with Minn.Stat. § 176.011, subd. 2 (1982) indicates to the contrary. If the legislature wishes "dependent" to mean wholly dependent or legally dependent, it can easily do so by amending Minn.Stat. § 176.-011, subd. 2.

decision that Nichole received regular and substantial contributions which were not only substantial but continued with regularity from 1979 up until the time of her grandfather's death.

 We arrive at the conclusion that Nichole was "dependent" only by an analysis of the statute and our prior cases. Nichole's father at all pertinent times possessed the monetary and physical capability to support Nichole. At the time of the hearing before the compensation judge he was earning in excess of $20,000 per year. This money was spent, according to Timothy himself, "foolishly." According to the divorce decree he had the legal custody of and the legal obligation to support his daughter. Relators assert, with some merit, that to allow the workers compensation system to be used as a means of child support in situations in which a grandparent, gratuitously or as a favor to an able, financially secure and independent son, and who partially supports the child, convolutes the meaning of "dependent."[7] However, for the reasons stated, such concern should be addressed to the legislature which may or may not wish to "clarify" the statutory meaning of "dependent" as used in Minn. Stat. § 176.011, subd. 2. Finally appellant asserts that enforcement of Timothy's obligation to support Nichole is available under Minn.Stat. ch. 518C (1982).[8] Even if appellant's contention is correct, it is irrelevant to interpretation of Minn.Stat. § 176.011, subd. 2. Accordingly, we are unable to conclude that the decision of the Workers' Compensation Court of Appeals was either contrary to law or manifestly contrary to the evidence, and we, therefore, affirm. Respondent is awarded $400 in attorney's fees.

Affirmed.

PETERSON, Justice (dissenting).

I must, with respect, dissent from what I consider an extraordinary result in this case, one that is not compelled by either statute or case law.

The two statutory criteria for the award of dependency benefits for a child or grandchild of a decedent employee are that the child is a "member of the family" of the decedent *and* "dependent upon him for support." Minn.Stat. 176.011, subd. 2 (1982). The statute before us lacks any gloss of prior judicial interpretation.

The proper application of the first criterion to the particular facts of this case is unclear, for the child's membership in the family is something of a hybrid. She did spend most of her waking and sleeping hours in the home of the grandparents, but her father was close by, in the same trailer park, and regularly took his evening meal with his parents and his child and visited with her at other unspecified times.

It is the second criterion, "dependent," a word that is virtually self-defining, upon which I focus my dissent. The majority opinion construes the word "dependent" in accord with interpretations provided in oth-

---

7. It is estimated that the cost of the dependency award to the employer and insurer will be between $400,000 and $700,000 depending on whether Nichole goes to college. Moreover, since Timothy has legal custody he may at any time remove Nichole from his parent's home, but the workers' compensation dependency liability will continue because "dependency" under the compensation law is determined as of the date of the death and cannot later be changed. Undoubtedly, there is merit to the contention that under these facts, the burden of support should not be passed on to the decedent's employer and insurer under the compensation law. We note that in interpreting a somewhat different Pennsylvania workers' compensation statute, the court in *Fitzpatrick v. Hudson Coal Co.,*

159 Pa.Super 53, 56–57, 46 A.2d 589, 591 (1946) said:

> In death cases, the purpose of the law is to provide compensation, as a substitute for the support of dependents by a decedent in his lifetime. But where a natural father is physically and financially able and is amenable to process adequate to compel him to discharge his legal duty, the undertaking of a decedent voluntarily assumed during his lifetime may not be passed on to the employer of the decedent under the compensation law, to the further relief of the natural father.

8. We express no opinion on whether the employer-insurer would have any subrogation rights to recover any or all the support paid to Nichole under the workers' compensation law.

er statutory provisions. Whatever relevance there may be in resort to interpretations afforded in other statutes, the majority's result, on the facts of this case, is plainly at odds with any purpose that reasonably could be ascribed to the legislature.

Webster's Third New International Dictionary defines "dependent" as "unable to exist, sustain oneself, or act suitably or normally without the assistance or direction of another or others." This surely is not a situation where the child was without support unless given it by the grandparents. It was, more realistically, a situation where the parents did not ask reimbursement from the child's father and were making a gratuity to their son, relieving him of the obligation that was his, not theirs. The child's father was regularly employed and had an annual income of $20,500, from which he readily could have reimbursed his parents for their expenditures. As the majority opinion notes, the father possessed no physical or mental disabilities and was financially self-sufficient. The father, in his own words, spent his money "foolishly" rather than using it to discharge his own obligations.

This case is not as novel as it might appear, for substantially the same situation was considered in Pennsylvania under a similar provision of the workers' compensation act of that state. The Pennsylvania court in *Fitzpatrick v. Hudson Coal Co.*, 159 Pa.Super. 53, 56–57, 46 A.2d 589, 591 (1946), stated:

> In death cases, the purpose of the law is to provide compensation, as a substitute for the support of dependents by a decedent in his lifetime. But where a natural father is physically and financially able and is amenable to process adequate to compel him to discharge his legal duty, the undertaking of a decedent voluntarily assumed during his lifetime may not be passed on to the employer of the decedent under the compensation law, to the further relief of the natural father.

The permanent obligation passed on to the employer (and its insurer) by today's decision is no minor matter. The benefits are permanent, for dependency death benefits are determined at the time of an employee's death. Were the father to remarry and remove the child from the grandparent's home to his own, the determination of dependency benefits would not be changed. The cost of these benefits to relators is in excess of $250,000. This result, in my view, defies both reason and justice, subverting the legislature's intention of providing dependency benefits only to those who are actually dependent upon a decedent for otherwise unavailable support.

AMDAHL, Chief Justice (dissenting).

I agree with the dissent of Justice Peterson.